UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LG. PHILIPS LCD., CO., LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHELE B. BOVIO    & ) <br> ROBERT C. FRAME, ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION NO. CV-04 11076 (RCL) |

**MEMORANDUM OF LAW IN SUPPORT OF FRCP 12(b)(1)
MOTION OF DEFENDANT ROBERT C. FRAME TO
DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

I. **INTRODUCTION**

Defendant Robert C. Frame ("Frame") moves to dismiss LG. Philips LCD., Co. Ltd.'s ("LPL") First Amended Complaint for Declaratory Judgment of Properly Recorded Inventorship ("Complaint") on the ground that this Court lacks subject matter jurisdiction over LPL's declaratory judgment claim. Pursuant to both Article III of the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, this Court lacks subject matter jurisdiction where there is no actual case or controversy between the named parties. Here, there is no actual case or controversy between LPL and Frame given that: (1) Through his counsel, Frame has advised LPL in writing that Frame will *not* sue to correct inventorship on the patents at issue in this case – *i.e.*, U.S. Patent Nos. 5,926,237, 6,002,457, 6,020,942, and 6,373,537 ("Side-Mount Patents" or "Patents"); (2) Frame has never threatened to sue LPL to correct inventorship on the Side-Mount Patents; and (3) Frame has assigned all of his rights in the Side-Mount Patents to his previous employer and, therefore, Frame lacks a present ownership or other interest necessary to confer standing to sue LPL on the Patents.

In light of the indisputable lack of any justiciable controversy between LPL and Frame, LPL's purpose and strategy for filing this lawsuit is best understood in the context of LPL's other currently-pending lawsuits concerning the Side-Mount Patents. On August 29, 2002, LPL filed a patent

infringement action in the Central District of California against three defendants – Chunghwa Picture Tubes, Ltd. ("CPT"), Tatung Co. of America and Tatung Company (the Tatung entities are referred to herein as "Tatung") – alleging infringement of these same Side-Mount Patents (the "California Action"). In its Answer and Counterclaims to the California Action, CPT alleged that the true inventors had not been identified in the Side-Mount Patents. The inventorship issue came to the forefront of the California Action in early March 2004, however, when counsel for CPT advised LPL that it would be filing a motion for summary judgment on LPL's Side-Mount Patent infringement claims ("MSJ") and a motion for leave to amend CPT's answer and counterclaims ("motion to amend") – both based on newly discovered "clear and convincing evidence" that the true inventors were not named in the Patents. Pursuant to the Local Rules governing the California Action, CPT was not allowed to immediately file its motions. Instead, CPT was first required to "meet and confer" with LPL's counsel to discuss the substance of its motions, and then had to wait at least 20 additional days after the meet and confer session before filing its motions.

Recognizing its precarious position in the California Action, LPL commenced a strategy to have the inventorship issue decided elsewhere. Shortly after CPT's March 2004 notification, LPL sought and secured CPT's agreement to stay the proceedings for sixty days – until May 25, 2004 – ostensibly to enable the parties to negotiate a resolution to LPL's Side-Mount Patent claims in light of CPT's clear and convincing evidence concerning inventorship. On May 24, 2004 – *after LPL realized an agreement would not be reached and only one day prior to the expiration of the stay* – LPL filed the Complaint in this Court attempting to transfer the inventorship determination from California to Massachusetts. The Complaint was particularly surprising given that LPL had successfully moved to dismiss a declaratory judgment counterclaim in the California Action for lack of subject matter jurisdiction based on the same grounds underlying this motion. LPL also filed an arbitration demand against CPT in New York and a separate declaratory judgment action against CPT in the Central

District of California on May 24 and May 26, 2004, respectively. On June 21, 2004, having waited the appropriate amount of time under the Local Rules, CPT filed its MSJ and motion to amend based on recently gathered evidence that LPL's Side-Mount Patents failed to disclose the true inventors – Frame and defendant Michele B. Bovio ("Bovio"). CPT's motions – filed as part of LPL's original patent infringement action against CPT dating back to August 2002 – are set for hearing before Judge Consuelo B. Marshall of the Central District of California on August 9, 2004.

Given that another district court is already scheduled to decide precisely the same issue of Frame and Bovio's inventorship, Frame suspects LPL filed the Complaint for three strategic reasons: (1) LPL – apparently dissatisfied with the record before Judge Marshall – hopes to litigate the inventorship issue from a clean record (obtaining, in essence, a second bite at the apple); (2) LPL would like to have additional time to conduct discovery on these inventorship issues (even though LPL filed its original California Action on these same Patents nearly two years ago); and (3) by suing them individually, LPL hopes to intimidate and harass Frame and Bovio and discourage them from cooperating as fact witnesses in the California Action.

Regardless of its motives, LPL cannot overcome the fatal flaws in the Complaint: (1) because there is no actual controversy between Frame and LPL, this Court does not have subject matter jurisdiction over LPL's claim under the Declaratory Judgment Act; and (2) because the only issue in this case – the inventorship of the Side-Mount Patents – is already pending before Judge Marshall in the California Action, this Court should not duplicate Judge Marshall's effort by allowing this action to go forward. LPL's claim should therefore be dismissed in favor of LPL's two-year-old case already pending in the Central District of California.[1]

---

[1] Although the grounds for this motion apply with equal force to LPL's claim against Bovio, LPL has not served Bovio with the Complaint and, therefore, a separate motion will be filed if and when LPL serves Bovio.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Brief History Of The Technology Underlying The Side-Mount Patents

In 1995, Digital Equipment Corporation ("DEC"), already an industry leader in the design of notebook computers, embarked on "Project-X" to design the next generation of notebook computers. Ex. 1 (February 24, 2004 Declaration of Robert C. Frame) at ¶¶7 and 9.[2] Frame, DEC's Director of Engineering, and Bovio, DEC's design and technical consultant for portable computer projects, worked with a team of engineers on the project.[3] Ex. 1 at ¶8; Ex. 2 (February 28, 2004 Declaration of Michele B. Bovio) at ¶¶3-4. By the end of September 1995, DEC had created the initial design requirements for Project-X. Ex. 1 at ¶¶9-10. Shortly thereafter, DEC chose LG Electronics Inc. ("LGE") to manufacture DEC's new notebook computer under DEC's supervision and according to its specifications.[4] Ex. 1 at ¶10.

During the early part of 1996, DEC decided to increase the size of the liquid crystal display ("LCD") in its Project-X notebook computer to 14.1 inches. Ex. 1 at ¶15. DEC had already re-designed the notebook housing and keyboard, however, to accommodate a smaller 13.3-inch display. Ex. 1 at ¶16. In March 1996, during a visit to Korea to investigate the possibility of using a 14.1-inch display in the already designed notebook housing, Frame and Bovio first conceived their idea of side-mounting the LCD module. Ex. 1 at ¶17; Ex. 2 at ¶10. At that time, all of LGE's 13.3 and 14.1-inch LCD module designs were "front-mounted" – *i.e.*, the screws to affix the module to the housing of the notebook computer were inserted from the front surface of the module. The front-mounted designs required a wide perimeter (or dead space) around the viewable display surface and resulted in a bulky

---

[2] All Exhibits referenced herein are attached to the Affidavit of Michael L. Resch filed concurrently herewith.

[3] DEC is no longer in existence and transferred its ownership interest in the Project-X assets (including the technology) to Hewlett Packard ("HP"). HP, in turn, transferred those assets to CPT in February 2004.

[4] LGE is the predecessor-in-interest to LPL. LPL was created in September 1999 as a 50-50 joint venture between LGE and Koninklijke Philips Electronics N.V. (aka Philips Electronics), and the Side-Mount Patent applications were transferred from LGE to LPL that same month.

LCD module. Ex. 1 at ¶20. After determining that it would be possible to fit a re-designed *side-mounted* 14.1-inch LCD module into the current design of the Project-X notebook computer, Frame and Bovio raised their idea of side-mounting with LGE's engineers. Ex. 1 at ¶23; Ex. 2 at ¶15; Ex. 5 (June 17, 2004 Supplemental Declaration of Michele B. Bovio) at ¶¶12-15.

In April 1996, LGE representatives met with DEC's Project-X team, and by April 22, 1996, DEC agreed that a side-mounted 14.1-inch LCD module would be part of the Project-X notebook computer. Ex. 1 at ¶27. To obtain patent rights for Frame and Bovio's side-mounting invention, DEC prepared a U.S. patent application and filed it on March 21, 1997. Ex. 6 (March 21, 1997 Patent Application). The DEC patent application discloses, among other things, a side-mounted LCD module and the mechanism for affixing that side-mounted LCD module to the housing of a portable computer. Ex. 6 at Fig. 2 (CPT 95594-96, 95612).

On or about September 13, 1997, DEC delivered its first Project-X notebook computer, the HiNote Ultra 2000. Ex. 1 at ¶41. The 14.1-inch version contained Frame and Bovio's side-mounted LCD module especially developed for Project-X, and made the HiNote Ultra 2000 the first 14.1-inch notebook sold in the world. Ex. 1 at ¶41.

On September 30, 1997, Frame "assign[ed], transfer[red] and convey[ed]" to DEC his "entire right, title and interest together with the benefits and privileges in and to" his inventions and discoveries set forth in the DEC patent application, including all of his rights, title and interest in the LCD side-mounting feature disclosed therein. Ex. 4 (September 30, 1997 Assignment). Frame also assigned to DEC his rights, title and interest in the same inventions as embodied in all other patent applications filed or to be filed worldwide. *Id.* This would include Frame's rights in the side-mounted invention claimed in LPL's Side-Mount Patents, as Frame has also signed a declaration acknowledging that "any ownership rights [he has] in the [Side-Mount Patents] were duly assigned to DEC pursuant to the [September 30, 1997 assignment]." Ex. 1 at ¶45.

Notwithstanding that the side-mounting technology was conceived by Frame and Bovio of DEC, beginning in April 1997, LGE began to file patent applications relating to the side-mounting technology, first in Korea, and subsequently in other countries, including the United States. Ex. 7 (U.S. Side-Mount Patents). From July 1999 to April 2002, each one of the four Side-Mount Patents issued to LPL. *Id.* Each Patent named the same five LGE employees as inventors: Hee Young Yun, Kyo Hun Moon, Byeong Yun Lee, Yong Bum Kim and Young Un Bang. *Id.* None of the Side-Mount Patents identified Frame or Bovio as an inventor. *Id.*

### B.     Background Of LPL's Side-Mount Patent Litigation

In August 2002, LPL filed the California Action asserting patent infringement against CPT and Tatung.[5] Ex. 8 (LPL's August 29, 2002 Complaint). In December 2002, CPT filed its original Answer and Counterclaims alleging, among other things, that (1) the inventors named in the Side-Mount Patents did not invent the claimed subject matter, and (2) other inventors had invented the subject matter of these patents.[6] Ex. 9 (CPT's December 20, 2002 Answer and Counterclaims at 6-9.).

#### 1.     In The California Action, *LPL* Filed A Motion To Dismiss On The Same Grounds Upon Which Frame Brings This Motion

On December 22, 2003, in the California Action, LPL and LGE jointly filed a motion to dismiss Tatung Company's ninth counterclaim for lack of subject matter jurisdiction. Ex. 10 (LPL and LGE's December 22, 2003 Memorandum of Points and Authorities in Support of their Motion to Dismiss). Tatung Company's ninth counterclaim sought a declaratory judgment that United States Patent No. 5,835,139 ("the '139 patent") was invalid. *Id.* at 1. LPL and LGE argued that no case or controversy existed because Tatung had no reasonable apprehension of a forthcoming suit concerning

---

[5] On April 24, 2003, LPL filed four additional actions on these same Side-Mount Patents. Ex. 11 (Complaints filed on April 24, 2003). On August 19, 2003, after these additional defendants had answered, Judge Marshall consolidated these five actions for purposes of claim construction and discovery. Ex. 12 (August 19, 2003 Minute Order).

[6] CPT filed its original answer four months after LPL filed its complaint because CPT first had to obtain relief from a default judgment (requested by LPL despite its knowledge that CPT was in the process of retaining counsel). Ex. 13 (October 25, 2002 Motion to Strike Entry of Default).

the '139 patent. *Id.* LGE also argued that because it had no present ownership interest in the '139 patent, there could be no case or controversy between LGE and Tatung regarding that patent. *Id.* Judge Marshall agreed with those arguments and dismissed Tatung Company's ninth counterclaim. Ex. 14 (March 5, 2004 Order Dismissing Ninth Counterclaim). As demonstrated below, LPL's declaratory judgment claim against Frame must be dismissed for the same reasons. *See supra* at 10-16.

### 2. CPT Discovered That The True Inventors Were Not Identified In The Side-Mount Patents

As part of its thorough investigation of the inventorship and ownership of the Side-Mount Patents, CPT repeatedly sought from LPL information evidencing the named LGE inventors' purported conception of the side-mount technology. Ex. 15 (CPT's First Set of Interrogatories). LPL and LGE (as a third party) consistently represented that they had no documents other than those contained in the file history. Exs. 16-18 (LPL's Responses to CPT's First Set of Interrogatories). Because LPL's Side-Mount Patents named five different inventors, LPL's claim that it did not have a single additional document evidencing any of the side-mount inventors' conception appeared highly suspect. LPL also did not produce any documents relating to the first reduction to practice of the side-mount invention (*e.g.*, the first prototype or product incorporating the invention). Ex. 19 (June 21, 2004 Declaration of Christopher A. Mathews) at ¶19. Forced to rely on Internet searches and discussions with experts in the LCD industry, CPT eventually discovered in May 2003 that LGE had first used the side-mounting technology in DEC's HiNote Ultra 2000 notebook computer. CPT then located Frame and Bovio who revealed that they – not anyone at LGE – were the true inventors of the claimed side-mounting technology.[7] Exs. 1 and 2. On February 24 and 28, 2004, Frame and Bovio

---

[7] CPT's counsel immediately began to investigate DEC's Project-X. In May 2003, for example, CPT subpoenaed HP (the successor-in-interest of DEC's assets), and eventually obtained draft agreements between LGE and DEC relating to Project-X. Beginning in July 2003, CPT served additional discovery requests on LPL, and later a subpoena on LGE, requesting documents relating to LGE's use of the side-mounted technology in Project-X. Exs. 20-22 (Discovery requests and subpoena regarding side-mounting technology). On February 10, 2004, CPT acquired from HP all of Frame and Bovio's ownership interests in the Side-Mount Patents.

provided sworn statements detailing their conception of the side-mounted technology. *Id.*

On March 4, 2004, CPT wrote to LPL and requested a meet and confer pursuant to Central District of California Local Rule 7-3 to discuss CPT's intention to file the MSJ and the motion to amend.[8] Ex. 23 (March 4, 2004 letter). The following week, CPT provided LPL with copies of all of the newly discovered evidence in a letter dated March 10, 2004. Ex. 24 (March 10, 2004 letter). Shortly thereafter, LPL requested and the parties agreed to a 60-day stay to discuss the possible resolution of LPL's Side-Mount Patent claims. Under the terms of Judge Marshall's March 23, 2004 order, the California Action was stayed until May 25, 2004. Ex. 25 (March 23, 2004 Stay Order).

It is now evident, however, that LPL's suggestion for a stay was nothing more than a ploy to buy time to initiate three actions seeking adjudication of CPT's anticipated counterclaims in other forums, including this one. On May 24, 2004, the day before the 60-day stay ended, LPL filed this case against Frame and Bovio seeking a declaratory judgment regarding inventorship – even though that issue had been raised in CPT's December 2002 Answer in the California Action and was the primary basis of CPT's MSJ and motion to amend. Ex. 9; Ex. 28 (MSJ); Ex. 33 (Motion to Amend). By taking advantage of Judge Marshall's stay as well as the Local Rule requiring a twenty-day notice period prior to the filing of any motion, LPL was able to get the present action on file before CPT could get its own motions on file in the California Action.

Also on May 24, 2004, LPL and LGE filed a demand for arbitration with the American Arbitration Association in New York pertaining to CPT's contract and conversion counterclaims. Ex. 26 (May 24, 2004 Demand for Arbitration). On May 26, 2004, the day after the 60-day stay ended, LPL along with LGE filed another lawsuit in the Central District of California seeking declaratory judgment regarding CPT's contract and conversion causes of action, as well as an order compelling

---

[8] In relevant part, Local Rule 7-3 provides: "[C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly ... the substance of the contemplated motion and any potential resolution [and] the conference shall take place at least twenty (20) days prior to the filing of the motion."

arbitration of those claims.[9] Ex. 27 (May 26, 2004 Complaint for Declaratory Judgment).

On June 21, 2004 – after an additional required meet and confer concerning CPT's motion to amend – CPT filed its MSJ on inventorship of the Side-Mount Patents and its motion to amend. Ex. 28. CPT scheduled the hearing on its motions for July 12, 2004. Ex. 28. In response, LPL filed an *ex parte* application to take CPT's motions off calendar or, alternatively, to continue the hearing on CPT's motions for up to sixty days to allow LPL more time to take discovery in support of its oppositions to both of CPT's motions. Ex. 30 (LPL's *Ex Parte* Application). Notably, LPL did not argue that CPT's motions, which squarely place the inventorship issue before Judge Marshall, were moot in light of the present case. *Id.* Judge Marshall granted LPL's *ex parte* application, in part, continuing the hearing on both motions to August 9, 2004. Ex. 31 (June 30, 2004 Minute Order).[10]

### 3. Frame Has Advised LPL That He Will *Not* Sue LPL To Correct Inventorship On The Side-Mount Patents

Frame has never threatened to sue LPL on the Side-Mount Patents, and LPL's Complaint does not allege otherwise. *See* Ex. 32 (July 16, 2004 letter from Frame's counsel). Indeed, Frame has advised LPL in writing that he will *not* assert or threaten to assert a claim under 35 U.S.C. § 256 for correction of inventorship on the Side-Mount Patents.[11] *Id.* Nonetheless, LPL has ignored Frame's unambiguous statement and refused to dismiss this lawsuit. *See* Ex. 34 (July 20, 2004 letter from LPL's counsel).[12] Instead, LPL has relied on a portion of Frame's declaration – submitted by CPT in the California Action – which states that Frame believes he should have been named as an inventor on

---

[9] The May 26, 2004 California case has been transferred to Judge Marshall. Ex. 29 (July 6, 2004 Minute Order).

[10] LPL's opposition to each CPT motion is due July 26, 2004. Ex. 31.

[11] In relevant part, section 256 provides:
> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

[12] After LPL notified Frame's counsel that it would not dismiss its claim against Frame – notwithstanding Frame's promise not to sue (Ex. 32) – Frame's counsel requested from LPL an explanation for its refusal and any supporting authority. Ex. 3 (July 20, 2004 letter from Frame's counsel). LPL has not yet responded to these requests.

the Side-Mount Patents. *See* Ex. 1 at ¶44. As demonstrated below, such statements do not give rise to an actual controversy under Article III and the Declaratory Judgment Act.

### III.   THE COURT SHOULD DISMISS LPL'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

#### A.   LPL Must Establish An Actual Controversy Sufficient To Satisfy The Jurisdictional Requirements

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration...." 28 U.S.C. § 2201(a). In accordance with Article III of the United States Constitution, the Declaratory Judgment Act requires an actual controversy between the parties before a federal court may exercise jurisdiction over a declaratory judgment action. *See* U.S. Const. art. III, § 2; *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 481 (Fed. Cir. 1996) ("The 'actual controversy' requirement [of the Declaratory Judgment Act] is met only if there is a justiciable case or controversy in the *constitutional* sense."); *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1470 (Fed. Cir. 1997); *Hewlett-Packard Co. v. GenRad, Inc.*, 882 F. Supp. 1141, 1156 (D. Mass. 1995); *N. Telecom Inc. v. Wang Labs., Inc.*, 543 F. Supp. 1026, 1027 (D. Mass. 1982).[13] An actual controversy must exist at all stages of the litigation. *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 635 (Fed. Cir. 1991) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)) ("an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.").

Under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that it has satisfied the jurisdictional requirements. *Airport Surface Techs., L.L.C. v. FieldTurf, Inc.*, 268 F. Supp.2d 999, 1001 (N.D. Ill. 2003). Thus, a declaratory plaintiff bears the burden to establish, by a preponderance of the evidence, an actual controversy such that the federal court has subject matter

---

[13] Federal Circuit law governs declaratory judgment actions involving patents. *See Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888, n.4 (Fed. Cir. 1992); *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987).

jurisdiction over the action. *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1340 (Fed. Cir. 2001) (the burden rests on the plaintiff to establish that "jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [claim] was filed."). The court may consider relevant evidence when a motion to dismiss challenges the factual basis for jurisdiction alleged in the complaint. *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991).

### B.     There Is No Actual Case Or Controversy Between LPL And Frame

This Court lacks subject matter jurisdiction over the declaratory judgment claim in the Complaint because there is no justiciable case or controversy between the parties as required by the Constitution and thus no actual controversy as required by the Declaratory Judgment Act.

Here, the Complaint asserts only federal question jurisdiction. In determining whether federal question jurisdiction exists in a declaratory judgment action, courts apply the well-pleaded complaint rule and determine whether the hypothetical claim by the declaratory judgment defendant is a federal question. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1578 (Fed. Cir. 1993) (citing *Speedco, Inc. v. Estes*, 853 F.2d 909, 912 (Fed. Cir. 1988)). In the typical patent declaratory judgment action, the declaratory defendant threatens to sue the declaratory plaintiff for infringement and the declaratory plaintiff files a declaratory judgment action seeking a judgment that the patent is not infringed, invalid or unenforceable. In such a case, the Federal Circuit applies a two-part test to determine whether an actual controversy exists. The test requires the plaintiff to establish: (1) "an explicit threat or other action by the [declaratory defendant], which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit" and (2) "present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Intellectual Prop. Dev., Inc.*, 248 F.3d at 1340-41 (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993)).

When a patent holder files a declaratory judgment action seeking a declaration that the

inventors were properly named on the patent – like LPL has done in the present case – the declaratory plaintiff bears the burden of establishing: "(1) that it holds a recognized interest in a patent that could be adversely affected by an action brought under section 256, and (2) *another party with a right to bring an action under section 256 has created in the declaratory plaintiff a reasonable apprehension that it will do so.*" *Fina Oil*, 123 F.3d at 1471 (emphasis added).

This Court lacks subject matter jurisdiction over LPL's declaratory judgment claim against Frame for two reasons: *First*, Frame has not created in LPL *any* apprehension – let alone a reasonable apprehension – that he will bring an action to correct inventorship under section 256. *Second*, even if he wanted to, Frame could not establish Article III standing to bring a section 256 action.

> 1. **Frame Has Not Created In LPL A Reasonable Apprehension That He Will Bring A Section 256 Action; To The Contrary, Frame Has Explicitly Advised LPL That He Will *Not* Bring Such An Action**

LPL has the burden to establish that Frame has created in LPL a reasonable apprehension that he will bring an action under section 256. *Fina Oil*, 123 F.3d at 1471.[14] That standard parallels the "reasonable apprehension" standard in traditional patent declaratory judgment cases. *Id.*

Here, it is indisputable that LPL cannot meet its burden. Frame has never threatened to bring a section 256 action against LPL. Ex. 32. More importantly, however, through his counsel's letter dated July 16, 2004, Frame advised LPL that he "*will not sue LPL to correct inventorship on the Side-Mount Patents.*" Ex. 32 (emphasis added). That letter in itself defeats LPL's claim of subject matter jurisdiction. *See Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1055, 1059 (Fed. Cir. 1995) ("[T]he trial court correctly concluded that Super Sack's promise [not to sue] Chase … precludes the existence of an actual controversy…. The legal effect of Super Sack's promise not to sue

---

[14] In *Fina Oil*, the court concluded that the district court had subject matter jurisdiction over the declaratory judgment action given that the plaintiff "had a reasonable apprehension that [the defendant] would bring a section 256 action to correct inventorship." *Id.* There – unlike here – the parties in the declaratory judgment action were parties to another litigation in state court where the declaratory defendant had sued the declaratory plaintiff and contended that the patents at issue had inventorship defects. *Id.* at 1469. As demonstrated below, Frame has not sued LPL, and LPL has no apprehension of any such lawsuit.

is the heart of the matter, and the trial court acted consistently with that legal effect."); *Hewlett-Packard*, 882 F. Supp. at 1156 (dismissing claim based on assurances that party would not sue); *see also Vesture Corp. v. Thermal Solutions, Inc.*, 284 F. Supp.2d 290, 295-96 (M.D.N.C. 2003) ("Defendants in this case have unconditionally promised not to sue.... As a result of Defendants' unequivocal statements of nonliability to Vesture, there is no actual controversy....").

LPL is well aware that Frame's explicit promise not to sue defeats its claim of jurisdiction. In LPL and LGE's reply brief in support of their own motion to dismiss in the California Action, LPL argued "LPL affirmatively promised not to sue Tatung with respect to past and present products; ***that promise, itself, defeats subject matter jurisdiction***." Ex. 35 (LPL and LGE's January 22, 2004 Reply Memorandum) at 14 (emphasis added). Judge Marshall agreed with LPL and dismissed Tatung Company's declaratory judgment counterclaim. Ex. 14 at 7 ("[LPL's] Promise Not to Sue Tatung on the '139 Patent Eliminates any Reasonable Apprehension."). Notwithstanding its identical argument in the California Action, LPL has refused to dismiss its claims here. Ex. 34.

Further, LPL's allegations standing alone do not establish a reasonable apprehension that Frame will bring a section 256 action to correct inventorship on the Side-Mount Patents. The Complaint alleges two purported bases for jurisdiction: "Frame asserts that he should have been named as an inventor on the [Side-Mount Patents] and is actively participating in CPT's threatened action against LPL to change the inventors of the [Side-Mount Patents]."

Those allegations are not sufficient to support jurisdiction here. "The purpose of the Declaratory Judgment Act is 'to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure – or never.'" *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1989) (quoting *Société de Conditionnement v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981)). Frame's mere assertion in a declaration as a fact witness that he should have been named as an inventor and any so-

called participation in the California Action – without any threat of suit – is a far cry from the adversarial threat described in *Hal Roach* and required under the Declaratory Judgment Act. Even assuming, *arguendo*, that LPL somehow subjectively interpreted Frame's statements as such a threat, LPL's belief was unreasonable and is therefore not relevant to the Court's determination of jurisdiction. *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) ("A purely subjective apprehension ... is insufficient to satisfy the actual controversy requirement.").

Nor can LPL rely on CPT's conduct in establishing subject matter jurisdiction over its claim against Frame. The Declaratory Judgment Act and Article III require "an actual controversy *between the parties*...." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996) (emphasis added). Further, "[t]he apprehension must have been caused *by the defendant's actions*." *Hal Roach*, 896 F.2d at 1556 (emphasis added). *See also PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 79 (1st Cir. 1996) ("The federal declaratory judgment statute aims at resolving potential disputes, often commercial in character, that can reasonably be feared by a potential target *in light of the other side's conduct*.") (emphasis added); *GTE Directories Publishing Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995) ("At an irreducible minimum, the party who invokes the court's authority under Article III must show: (1) that they personally have suffered some actual or threatened injury *as a result of the alleged conduct of the defendant*....") (emphasis added).

Accordingly, in view of Frame's explicit promise not to sue LPL for correction of inventorship of the Side-Mount Patents, LPL cannot satisfy its burden of proving that Frame has caused in it a reasonable apprehension that he will file a section 256 action and, therefore, LPL's claim should be dismissed for lack of subject matter jurisdiction.

### 2. Because He Has Assigned All Of His Rights In The Side-Mount Patents, Frame Does Not Have The Right To Bring An Action Under Section 256

LPL also cannot meet its burden of establishing Frame has the *right* to bring an action to correct inventorship under 35 U.S.C. § 256. *Fina Oil*, 123 F.3d at 1471 (requiring that a "*party with a*

***right to bring an action under section 256*** has created in the declaratory plaintiff a reasonable apprehension that it will do so") (emphasis added). Pursuant to Frame's September 30, 1997 assignment to his previous employer DEC, Frame "assign[ed], transfer[red] and convey[ed]" to DEC his "entire right, title and interest together with the benefits and privileges in and to" the inventions underlying the Side-Mount Patents. Ex. 4. Frame has also acknowledged that "any ownership rights [he has] in the [Side-Mount Patents] were duly assigned to DEC pursuant to the [September 30, 1997 assignment]." Ex. 1 at ¶45.

Frame's lack of any ownership or other concrete financial interest in the Side-Mount Patents forecloses his ability to establish Article III standing to bring a section 256 action.[15] In *Chou v. Univ. of Chicago*, 254 F.3d 1347 (Fed. Cir. 2001), the court required the section 256 plaintiff to establish that "she has suffered an injury-in-fact, that the injury is traceable to the conduct complained of, and that the injury is redressable by a favorable decision." *Id.* at 1357. The court determined that a party with "a concrete financial interest in the patent, albeit an interest less than ownership" has standing to sue under section 256. *Id.* at 1359. Relying on the plaintiff's right to receive 25% of the gross royalties and payments from licensing activities and also 25% of the stock of new companies based on her inventions, the court concluded that the plaintiff had standing under Article III to sue for correction of inventorship. *See Cole v. Gummow*, No. 3-02-CV-0705, 2003 U.S. Dist. LEXIS 18925, at *9-10 (N.D. Tx. Oct. 22, 2003) (concluding plaintiff failed to prove a concrete financial interest in the patents at issue and therefore did not have standing to sue under section 256).[16]

---

[15] Frame's assignment of his rights also negates any claim that LPL had a "reasonable apprehension" Frame would file a section 256 action.

[16] Although the *Chou* court stated in passing that it is not "implausible" that a reputational interest alone could satisfy the standing requirements, that statement was clearly dicta as the court stated that it "need not decide that issue." *Chou*, 254 F.3d at 1359. In *Cole*, the court decided that plaintiff's assertion of a reputational interest was insufficient to confer standing. *Cole*, 2003 U.S. Dist. LEXIS 18925, at *10. In any event, by promising not to sue LPL under section 256, Frame has agreed that he will not argue any reputational interest as a basis for standing under that section. Ex. 32.

Here, Frame has no ownership, financial or other interest whatsoever in the Side-Mount Patents given his September 30, 1997 assignment. Thus, since September 1997, Frame has not had standing to sue any company under section 256. *Cf. N. Telecom Inc.*, 543 F. Supp. at 1028 (finding no jurisdiction given that declaratory defendant stated it neither owns nor has any interest in the patent); Ex. 35 at 2 ("There can be no 'case or controversy' between LGE and Tatung regarding the '139 patent because LGE has no ownership interest in the '139 patent...."). Accordingly, LPL's declaratory judgment claim should be dismissed on this independent ground as well.

## IV. IN LIGHT OF THE PENDING ACTION IN THE CENTRAL DISTRICT OF CALIFORNIA AND LPL'S BAD FAITH CONDUCT, THE COURT SHOULD DISMISS LPL'S CLAIM

### A. This Court Should Dismiss LPL's Claim In Favor Of The Pre-Existing And Ongoing California Action Involving These Same Patents

It is well established that notwithstanding the existence of an actual controversy, district courts have broad discretion to decline to exercise their jurisdiction in declaratory judgment actions. *Cygnus Therapeutic Sys. v. Alza Corp.*, 92 F.3d 1153, 1158-59 (Fed. Cir. 1996); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-287 (1995)) ("the Declaratory Judgment Act thereby accords district courts a 'unique breadth of ... discretion to decline to enter a declaratory judgment' ... '[t]he statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.'").

Armed with this broad discretion to decline jurisdiction over declaratory judgment claims – assuming there is jurisdiction in the first instance – courts routinely dismiss such claims where there is a pending lawsuit elsewhere involving the same issues. *Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967). *See W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985) ("In particular, 'a court may . . . in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere.'") (citation omitted); *McGraw-Edison Co. v. Preformed*

*Line Prods. Co.*, 362 F.2d 339, 342-43 (9th Cir. 1966) (*"It is well settled, however, that a declaratory judgment may be refused where … it is being sought merely to determine issues which are involved in a case already pending and can be properly disposed of therein … especially if the issue is one … that can better be adjudicated in another court…."*) (emphasis added).[17]

Dismissal in favor of a pending lawsuit involving the same issues not only preserves judicial resources, but also protects against the danger of two district courts reaching inconsistent conclusions. For example, in *Boston & Maine Corp. v. United Transp. Union*, 110 F.R.D. 322 (D. Mass. 1986), the court stated:

> The Federal Courts long have recognized that the principle of comity requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs. 'As between federal district courts, . . . . the general principle is to avoid duplicative litigation.' The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.

*Id.* at 328 (citations omitted) (quoting *W. Gulf*, 751 F.2d at 728-29). *See also Hooker v. Burson*, 960 F. Supp. 1283, 1291-92 (M.D. Tenn. 1996) ("One of the principles underlying the doctrine of comity is the desire to avoid conflicting decisions whenever possible.").

Here, the concerns expressed in *Boston & Maine Corp.* are all present. It is beyond question that the inventorship issue raised in LPL's Complaint is currently before Judge Marshall in the California Action. In its December 2002 Answer, CPT alleged that the true inventors had not been identified on the Side-Mount Patents. Ex. 9. CPT has already conducted substantial discovery on the

---

[17] *See Sweetheart Plastics, Inc. v. Ill. Tool Works, Inc.*, 439 F.2d 871, 876 (1st Cir. 1971) (even if district court had determined that the issue was justiciable, it still might have been wise to have declined jurisdiction given pending litigation in Illinois); *see also Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1218 (7th Cir. 1980) (finding a pending lawsuit was "an appropriate basis on which to decline to exercise [the court's] discretionary jurisdiction"); *Bausch & Lomb Inc. v. CIBA Corp.*, 39 F. Supp. 2d 271, 275 (W.D.N.Y. 1999) (pendency of another lawsuit coupled with declaratory plaintiff's use of the litigation as a negotiating "weapon" warranted dismissal); *Gates Constr. Corp. v. Koschak*, 792 F. Supp. 334, 337 (S.D.N.Y. 1992) (citations omitted) ("One basis for declining to hear a declaratory judgment action is the existence of a pending action in another court that will resolve the controversies between the parties in the declaratory judgment action."); *Green v. State ex rel. Faircloth*, 318 F. Supp. 745, 750 (S.D. Fla. 1970) (discretion under Declaratory Judgment Act "may be exercised to dismiss a declaratory judgment suit if the same issue is pending in litigation elsewhere.").

inventorship issue. Exs. 15-22. Based on clear and convincing evidence gathered in discovery, CPT filed its MSJ, which is scheduled to be heard on August 9, 2004.[18] Exs. 28 and 31. That MSJ concerns precisely the same inventorship issue that LPL would have this Court *begin* to analyze now – after nearly two years of litigation in California. Ex. 28.

Thus, the California Action is proceeding forward on the issues of inventorship, and in order to avoid irresolvable procedural problems and wasting resources, the Court should dismiss LPL's claim. If LPL's declaratory judgment claim is allowed to proceed, this Court would be forced to address the impact of Judge Marshall's rulings, including but not limited to discovery orders and any rulings concerning the inventorship of the Side-Mount Patents. Similarly, Judge Marshall would be forced to address this Court's rulings – all while the danger of inconsistent decisions looms. Further, this action would force this Court to become familiar with a substantial record already before Judge Marshall and would be an enormous waste of both this Court's and the parties' time and resources.

In short, there is no legal or factual support for LPL to argue that this Court should decide the inventorship issue alongside the Court in California, or should usurp that issue from Judge Marshall in the ongoing lawsuit between LPL and CPT.

### B.  LPL's Improper Conduct Also Warrants Dismissal

Courts frequently dismiss declaratory judgment claims when faced with a declaratory plaintiff who, in filing the declaratory judgment action, abused the litigation process. *See, e.g., EMC Corp.*, 89 F.3d at 815 ("[T]he district court could properly view the declaratory judgment complaint as a tactical measure filed in order to improve EMC's posture in the ongoing negotiations – not a purpose that the Declaratory Judgment Act was designed to serve."); *Bausch & Lomb*, 39 F. Supp.2d at 275; *Chiron Corp. v. Advanced Chemtech, Inc.*, 869 F. Supp. 800, 802 (N.D. Ca. 1994) (concluding "it is

---

[18] CPT's motion to amend, in part to include causes of action arising out of LPL's knowledge and concealment of the inventorship issue, is also scheduled for hearing on August 9, 2004. Exs. 31 and 33.

inappropriate to reward a declaratory judgment plaintiff who races to the courthouse when the [defendant] has engaged in good faith settlement negotiations."); *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993) (dismissing declaratory judgment action "because it would be inappropriate to reward – and indeed abet – conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources.").

Here, LPL's litigation tactics compel dismissal of its declaratory judgment action. In March 2004, after refusing to provide discovery on the inventorship issue – forcing CPT to spend substantial time investigating the technology underlying the Side-Mount Patents – LPL received notification that CPT was going to file its MSJ and motion to amend. Exs. 23 and 24. CPT notified LPL of its intention to file those motions pursuant to the Central District of California's Local Rules, which provide the non-moving party with twenty days advance notice *after* the parties have met and conferred on the substance of the motions. *See supra* at n. 8. At that time – realizing that CPT had discovered the true inventors and recognizing the sensitive stage of the California Action – LPL embarked upon a strategy to distance itself from the infringement action it filed on these same Side-Mount Patents nearly two years earlier. LPL's strategy included:

- In mid-March 2004, LPL obtained CPT's agreement to stay the proceedings based on LPL's commitment to negotiate in good faith regarding LPL's Side-Mount Patent claims. On March 23, 2004, Judge Marshall ordered the stay, staying the California Action until May 25, 2004. Ex. 25.

- On May 24, 2004 – one day prior to the expiration of the stay ***and with the knowledge that CPT would be filing two motions based on the Side-Mount Patents inventorship issue before Judge Marshall*** – LPL filed this lawsuit against Frame and Bovio involving the Side-Mount Patents inventorship. On the same day, LPL filed an arbitration demand against CPT in New York. Ex. 26. On May 26, 2004, LPL and LGE filed a declaratory judgment action against CPT in the Central District of California – which has since been transferred to Judge Marshall. Exs. 27 and 29.

- After CPT filed its inventorship-based motions on June 21, 2004, LPL filed an *ex parte* application to take the motions off calendar or to continue them for up to sixty days. Ex. 30. The motions – originally scheduled for hearing on July 12, 2004 – were continued to August 9, 2004 to allow LPL more time to conduct additional discovery on CPT's MSJ. Ex. 31.

LPL's strategic filing of this lawsuit was clearly not within the policy of the Declaratory Judgment Act. Rather, it appears that LPL filed this lawsuit because a new action permits LPL to litigate the inventorship issue from a clean record with additional time to conduct discovery and also because this lawsuit might intimidate and harass Frame and Bovio, making them less willing to cooperate in the California Action. Such improper motives and conduct alone warrant dismissal of LPL's declaratory judgment claim. *See Davox*, 846 F. Supp. at 148.

## V. CONCLUSION

For the foregoing reasons, defendant Robert C. Frame respectfully requests that this Court dismiss LPL's declaratory judgment claim against him.

> The Defendant,
> ROBERT C. FRAME
> By his Attorneys,
>
> _____
> Andria Coletta (BBO No. 636930)
> TAYLOR DUANE BARTON & GILMAN, LLP
> 111 Devonshire Street
> Boston, MA 02109
> (617) 654-8200
> (617) 482-5350-Facsimile

Of Counsel:
Teresa M. Corbin
Glenn W. Rhodes
Christopher A. Mathews
Brian S. Kim
Michael L. Resch
HOWREY SIMON ARNOLD & WHITE, LLP
550 South Hope Street, Suite 1100
Los Angeles, CA 90071
Telephone: (213) 892-1800
Fax: (213) 892-2300

### CERTIFICATE OF COUNSEL

I, Andria Coletta, attorney for defendant, Robert C. Frame, hereby certify that the parties conferred prior to filing the above motion in accordance with Local Rule 7.1. I further certify that, on July 22, 2004, I mailed a copy of the following Memorandum of Law in Support of FRCP 12(b)(1) Motion of Defendant Robert C. Frame To Dismiss For Lack of Subject Matter Jurisdiction by regular mail, postage prepaid, to Andrew M. Higgins, Casner & Edwards, LLP, 303 Congress St., Boston, MA 02210 and Anthony C. Roth, Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Ave., N.W., Washington, D.C. 20004.

_____
Andria Coletta (BBO No. 636930)