UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. CV-04 11076 RCL

LG. PHILIPS LCD., CO., LTD.,            )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )
                                        )
MICHELE B. BOVIO                        )
        &                               )
ROBERT C. FRAME,                        )
                                        )
Defendants.                             )
                                        )
_____ )

### MEMORANDUM OF LAW IN SUPPORT OF FRCP 12(b)(2) MOTION OF DEFENDANT MICHELE B. BOVIO TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Michele B. Bovio ("Bovio") submits this memorandum of law in support of

his motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal

Rules of Civil Procedure.

## I.   INTRODUCTION

Bovio, a 72 year-old Italian citizen who has not visited or transacted business in the

United States since June 2001, brings this motion to dismiss on the ground that exercising

personal jurisdiction here would violate the Due Process Clause of the Fifth Amendment of the

United States Constitution.  Due process requires that a nonresident defendant have at least

"minimum contacts" with the forum "such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945).  Bovio does not have such minimum contacts, and the claim against him should

therefore be dismissed.

Bovio was born and raised in Italy. In June 2001, after spending approximately 10 years in the United States working as a nonresident alien under a business visa, Bovio returned to Italy with his wife, Egle Bovio ("Mrs. Bovio"). Mrs. Bovio is now 77 years old and is legally disabled due to being partially paralyzed and requires constant care. Mrs. Bovio has two nurses who assist Bovio in caring for her, and Bovio has not traveled and left Mrs. Bovio overnight since early 2003.

Bovio and Mrs. Bovio were living in Italy – with no business contacts with Massachusetts or the United States – when counsel for Chunghwa Picture Tubes, Ltd. ("CPT") contacted Bovio. The plaintiff here – LG. Philips LCD Co., Ltd. ("LPL") -- had filed a patent infringement lawsuit against CPT in the Central District of California on August 29, 2002 (the "California Action"). Based on research conducted by CPT's counsel, it appeared that Bovio had relevant information concerning patents at issue in the California Action. Bovio agreed to cooperate as a fact witness in the California Action and that decision has resulted in him being sued by LPL here in Massachusetts. As demonstrated below, Bovio's participation in the California Action does not provide a basis for personal jurisdiction.

The plaintiff bears the burden of proving that the district court may exercise general or specific personal jurisdiction over a defendant. Here, LPL has not alleged and cannot prove either general or specific jurisdiction over Bovio.

A district court may exercise general personal jurisdiction only where the defendant has "continuous and systematic general business contacts" with the forum such that he could reasonably foresee being hailed into court in that forum for any matter. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Thus, "the critical focus for general jurisdictional purposes must necessarily be on the time the suit is filed." *Gummow v. Cole*, 2002

U.S. Dist. LEXIS 8271, *8 (N.D. Ill. 2002). This lawsuit was originally filed on May 24, 2004. At that time, Bovio did not have "continuous and systematic general business contacts" with Massachusetts or the United States.[1] Bovio left Massachusetts in early 2000 and has not returned since that time. Bovio has not returned to the United States since his departure in June 2001 – nearly three years prior to the filing of this lawsuit. Further, Bovio's only contacts – business or otherwise – with the United States since 2001 have been a few, *occasional* communications. Thus, this Court does not have general jurisdiction over Bovio.

Nor does this Court have specific jurisdiction over Bovio. A district court may exercise specific jurisdiction where: (1) the defendant purposefully directed his activities at residents in the forum; (2) the plaintiff's claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable and fair. *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998). LPL's failure to allege and prove the first two prongs requires dismissal of its claim against Bovio. LPL's claim must also be dismissed because the exercise of personal jurisdiction over him would not be reasonable and fair.

The specific personal jurisdiction analysis depends, in part, on the nature of LPL's claim against Bovio. LPL filed the First Amended Complaint in this Court on July 9, 2004 (the "Complaint"). The Complaint relates to Bovio's participation as a fact witness in the California Action, including providing declarations to CPT asserting he should have been named as an inventor on patents at issue in the California Action. *See* Complaint at ¶¶ 12, 14-15 (relying on

---

[1]   LPL might argue Bovio's contacts with the United States as a whole – not simply his contacts with Massachusetts – are relevant to the determination of this motion. *See infra* at 9-10. Because Bovio does not have the necessary contacts with either the Commonwealth of Massachusetts or the United States, the distinction is not significant and LPL's claim should be dismissed under either analysis. Accordingly, Bovio will consider his contacts with both Massachusetts and the United States as a whole in analyzing personal jurisdiction in this motion.

Bovio's February 28, 2004 declaration in the California Action – subsequently, on June 17, 2004, Bovio signed a supplemental declaration concerning facts related to the California Action). Thus, the issue presented by this motion is whether Bovio's conduct as a fact witness in the California Action subjects him to specific personal jurisdiction. The answer is no:

- ***First,*** in participating as a fact witness in the California Action, Bovio did not purposefully direct his activities at residents of either the Commonwealth of Massachusetts or the United States. If anyone, Bovio's declarations are directed at LPL and CPT – Korean and Taiwanese companies, respectively. Further, Bovio did not initiate contact with anyone in the Commonwealth of Massachusetts or the United States regarding the California Action; he was contacted by CPT's counsel.

- ***Second,*** LPL's claim does not arise out of Bovio's activities in the Commonwealth of Massachusetts or the United States given that Bovio was located in Italy at all times relevant to his participation as a witness in the California Action. Rather, LPL's claim arises out of *CPT's* filing of Bovio's declarations and *CPT's* threat to bring claims against LPL. *See* Complaint at ¶ 14.

- ***Third,*** the exercise of personal jurisdiction here is not reasonable and fair. Bovio is a 72 year-old man who has not been to the United States in more than three years. Bovio has responsibilities in Italy to care for his legally disabled wife. Further, the only reason Bovio finds himself the subject of a lawsuit is because CPT's counsel called upon him to provide truthful testimony as a fact witness in the California Action – and Bovio agreed to do so.

Because this Court does not have specific or general personal jurisdiction over Bovio and therefore exercising jurisdiction would violate due process requirements, LPL's claim against Bovio should be dismissed.[2]

## II.    FACTUAL BACKGROUND

### A.    As An Italian Citizen With Permanent Residence In Switzerland, Bovio Worked In The United States As A Nonresident Alien From 1991 – 2001

Bovio was born in Italy in 1932. *See* Affidavit of Michele B. Bovio ("Bovio Aff.") filed concurrently herewith, at ¶3. At the age of 14, Bovio obtained his first employment for Olivetti in Italy. *Id.* After many years, Bovio became Director of Olivetti's Consumer Division, and in late 1991, Bovio began working as a consultant for the law firm of Sullivan & Cromwell in New York City. *Id.* Bovio was not an employee of Sullivan & Cromwell, however, and the law firm did not directly compensate him. *Id.* Rather, Sullivan & Cromwell paid a European consulting company that compensated Bovio for his consulting work. *Id.*

In 1992, Bovio became a notebook consultant for Zenith Data Systems in Chicago, Illinois. *Id.* In the summer of 1993, Bovio began working as a design consultant for Digital Equipment Corporation in Boston, Massachusetts. *Id.* Bovio worked in Boston until early 2000 when he moved to Houston, Texas. *Id.* As with his arrangement with Sullivan & Cromwell, Bovio was not an employee of any other American companies, and was not directly compensated by them. *Id.*

---

[2]    Bovio believes that this Court also lacks subject matter jurisdiction and, if necessary, anticipates filing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on similar grounds to those asserted in the Memorandum of Points and Authorities in Support of Rule 12(b)(1) Motion of Robert C. Frame ("Frame") to Dismiss for Lack of Subject Matter Jurisdiction, filed in this Court on July 22, 2004 ("Frame Mem." or "Frame Memorandum"). If necessary, Bovio also anticipates filing a motion to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a) as the issue of inventorship of the patents involved in this case has already been at issue in the California Action for two years.

Bovio worked in the United States as a nonresident alien under a business visa. *Id*. at ¶4. While working in the United States, Bovio was an Italian citizen and kept his permanent residence in Switzerland. *Id.* In June 2001, Bovio left the United States and returned to Italy. *Id.*

## B.    Bovio's Contacts With The United States From June 2001 To The Present

Bovio currently resides in Banchette, Italy with his wife, Egle Bovio, and is the equivalent of Chief Executive Officer of Carena & Associati, SRL ("Carena") – a small Italian business that handles mechanical and electrical design projects. Bovio Aff. at ¶2. Mrs. Bovio is 77 years old and legally disabled due to being partially paralyzed. *Id.* She has two nurses who assist Bovio in caring for her, and as a result of Mrs. Bovio's disability, Bovio has not been able to travel and leave Mrs. Bovio overnight since early 2003. *Id.*

Bovio's contacts with the United States over the past three years have been extremely limited:

- Bovio has not returned to the United States after leaving in June 2001 (*id.* at ¶5);
- Bovio does not have a residence in the United States (*id.*);
- Bovio has not performed consulting services for, or been employed by, any American companies since leaving the United States. *Id.* Nor has Carena performed any consulting services for any American companies (*id.*);
- Bovio does not have a business or office in the United States (*id.*);
- Bovio does not own an interest in any real estate in the United States (*id.*);
- Bovio did not contact CPT or its counsel to become involved in the California Action; CPT's counsel found and contacted Bovio (*id.* at ¶11);
- At all times relating to the preparation, review and signing of his February 28, 2004 and June 17, 2004 declarations submitted by CPT in the California Action, Bovio was present in Italy. *Id.* at ¶¶7-10. Further, during all discussions with counsel concerning the declarations, Bovio was present in Italy. *Id.* Thus, any participation

6

by Bovio as a witness in the California Action occurred while Bovio was present in Italy. *Id.* For example, LPL conducted Bovio's deposition in Milan, Italy. *Id.* at ¶10.

Indeed, Bovio's only contacts with the United States during the previous three years are: (1) occasional telephone calls with friends concerning personal matters; (2) communications with counsel in his capacity as a witness in the California Action; (3) communications while Bovio was in Italy from Fleet Bank, American Express and Charles Schwab concerning personal accounts Bovio has maintained in America; and (4) very few preliminary and ultimately futile telephone conversations with a New Hampshire company on behalf of his present business, Carena. *Id.* at ¶11.

### C.    LPL's Claim Against Bovio Relates To His Participation From Italy As A Fact Witness In The California Action

As set forth in detail in the Frame Memorandum, LPL strategically filed this lawsuit immediately prior to the expiration of a stay in the California Action. *See* Frame Mem. at 18-20. LPL's Complaint leaves no doubt that LPL filed this lawsuit in response to Bovio's participation as a fact witness in the California Action:

- "On February 28, 2004, Bovio executed a declaration claiming that he and Frame should have been named as inventors on the '237, '457, '942, and '537 patents, and that he had assigned to [DEC] his rights in the inventions claimed in these patents." Complaint at ¶ 12.

- "Bovio and Frame provided their declarations to Chunghwa Picture Tubes Co. [sic], Ltd. ("CPT")." Complaint at ¶ 14.

- "On information and belief, Bovio and Frame are acting in concert with CPT to take actions calculated to damage LPL's ability to license and enforce the '237, '457, '942, and '537 patents." *Id.*

- "A real and justiciable controversy now exists between LPL and Bovio because Bovio asserts that he should have been named as an inventor on the '237, '457,

7

'942, and '537 patents and is actively participating in CPT's threatened action against LPL to change the inventors of the '237, '457, '942, and '537 patents." Complaint at ¶ 15.

- "Plaintiff prays for a ... permanent injunction prohibiting Bovio and Frame from asserting or threatening to assert a claim under 35 U.S.C. § 256 for correction of inventorship to name them as inventors of the [patents at issue]...." Complaint at 5.

LPL's Memorandum of Law in Support of LPL's Opposition to Defendant Frame's FRCP 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed on August 5, 2004 ("LPL's Mem." or "LPL's Memorandum"), also confirms that this lawsuit arises out of Frame and Bovio's participation in the California Action and also CPT's actions there. Indeed, LPL's entire argument that this Court has subject matter jurisdiction over its claims – incorrect as it may be – is grounded on the conduct of Frame, Bovio and CPT in the California Action. LPL's Mem. at 5-7, 8-12. In short, Bovio's participation as a witness in the California Action during the past year is at the heart of this lawsuit, and LPL's claim here arises from that participation. *See infra* at 15-16.

## III.    ARGUMENT

### A.    Legal Standards Governing This Motion

Federal Circuit law governs motions to dismiss for lack of personal jurisdiction in patent-related cases. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002). Federal Circuit law also applies to personal jurisdiction motions in declaratory judgment actions – like this action – that involve underlying patent claims. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving the court's jurisdiction over the defendant. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002), *cert. denied*, 537 U.S. 1029

8

(2002). In determining whether the plaintiff has met its burden, courts generally consider whether the plaintiff has made a "*prima facie*" showing that the defendant is subject to personal jurisdiction. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003); *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675-78 (1st Cir. 1992). The other tests require the district court to hold an evidentiary hearing where, for example, the proffered evidence is in conflict or plaintiff's evidence is patently incredible. *See Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp. 2d 34, 38-39 (D. Mass. 2003). At this time, Bovio believes that the evidence will not be in conflict and that an evidentiary hearing is unnecessary.[3] In any event, as demonstrated below, LPL cannot meet the lowest *prima facie* burden.

In determining whether a federal court has personal jurisdiction over a defendant, the Federal Circuit generally applies a two-prong analysis: (1) whether the long-arm statute of the state in which the court sits confers jurisdiction over the defendant; and (2) whether the exercise of jurisdiction over the defendant would violate due process. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998); *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 144 (1st Cir. 1995). *See also* Fed. R. Civ. Proc. 4(k)(1)(A). Because the scope of the Massachusetts long-arm statute is coextensive with federal due process requirements, however, federal courts in Massachusetts "sidestep the statutory inquiry and proceed directly to the constitutional analysis...." *Daynard*, 290 F.3d at 52.

Here, LPL might argue that Federal Rule of Civil Procedure 4(k)(2) – the "federal long-arm statute" – applies. Rule 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising

---

[3]    Bovio reserves the right to argue in reply for a heightened burden should LPL offer conflicting or incredible evidence or suggest jurisdictional discovery is necessary.

> under federal law, to establish personal jurisdiction over the person
> of any defendant who is not subject to the jurisdiction of the courts
> of general jurisdiction of any state.

When a plaintiff seeks to invoke Rule 4(k)(2), it must make a *prima facie* showing that (1) the claim asserted arises under federal law; (2) personal jurisdiction is not available under any situation-specific federal statute; and (3) the defendant's contacts with the United States as a whole satisfy the due process standards. *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999). The plaintiff must also certify that "based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state." *Id.*

Thus, the same constitutional analysis applies, regardless of whether the personal jurisdiction issue is analyzed pursuant to Rule 4(k)(2) or the traditional two-prong analysis. The only distinction is whether the court considers the defendant's contacts with the United States as a whole, under Rule 4(k)(2), or with the forum state only as in the traditional two-prong analysis. As detailed below, LPL has not alleged and cannot make a *prima facie* showing that Bovio's contacts with either the Commonwealth of Massachusetts or the United States satisfy due process requirements. Accordingly, LPL's claim against Bovio should be dismissed regardless of whether this Court applies Rule 4(k)(2).

### B.    Due Process Requirements For The Exercise Of Personal Jurisdiction

A district court can only exercise personal jurisdiction over a nonresident defendant who has "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316. Since its decision in *International Shoe*, the United States Supreme Court has explained that the minimum contacts must be "purposeful" contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). "The requirement for purposeful minimum contacts helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994). Further, "courts must exercise even greater care before exercising personal jurisdiction over foreign nationals."

*Noonan v. Winston Co.*, 135 F.3d 85, 93 (1st Cir. 1998) (citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102 (1987)).

A district court may exercise authority over a defendant when the plaintiff meets its burden of establishing either general or specific jurisdiction. *Mass. Sch. of Law at Andover, Inc. v. ABA*, 142 F.3d 26, 34 (1st Cir. 1998). Here, LPL cannot meet that burden, and this Court should therefore dismiss LPL's claim against Bovio.

### C.    This Court Does Not Have General Jurisdiction Over Bovio

General jurisdiction exists when the plaintiff's claim is not directly founded on the defendant's forum-based contacts, but the defendant has "continuous and systematic general business contacts" with the forum. *Helicopteros,* 466 U.S. at 416; *Deprenyl,* 297 F.3d at 1350. In determining whether general personal jurisdiction exists, the court should focus its analysis on the time the suit is filed. *Gummow,* 2002 U.S. Dist. LEXIS 8271 at *7-8. "The Due Process Clause [therefore] ... gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 289 (1980) (quoting *International Shoe*, 326 U.S. at 315). Indeed, a party may "alleviate the risk of burdensome litigation by ... severing its connection with the [forum]." *Id.*

In *Gummow*, plaintiff Gummow filed a declaratory judgment action against defendant Cole to correct the inventorship of a patent pursuant to 35 U.S.C. § 256. *Gummow,* 2002 U.S. Dist. LEXIS 8271 at *1. Gummow, an Illinois resident, alleged that he conceived and designed an indexable improvement to his already-patented dual action ratchet wrench, and that he communicated his improvement to Cole, a Texas resident. *Id.* at *3. On June 16, 1994, Cole filed a patent application for an indexable head ratchet wrench, and on May 30, 1995, Cole was

11

issued the '221 patent, naming Cole as the sole inventor. *Id.* On February 22, 2002, Gummow brought the declaratory judgment action in the Northern District of Illinois. *Id.* at *3-4.

Cole moved to dismiss for lack of personal jurisdiction and submitted an affidavit stating that his last personal contact with Illinois was in 1995, and between 1995 and 1998, Cole's contact with Illinois was limited to his role as a company representative. *Id.* Cole further declared that he had not made contact with Illinois in any capacity since March 1998. *Id.* Gummow offered no evidence refuting Cole's representations concerning his contacts with Illinois. *Id.* Nonetheless, Gummow contended that the court had general jurisdiction over Cole by virtue of his contacts from 1994 through 1998. *Id.* at *7. Relying on the general jurisdiction principles quoted above, the district court concluded that it could not assert general jurisdiction over Cole: "Cole severed his ties with Illinois in March 1998, nearly four years before this suit was filed. Therefore, the court cannot assert general jurisdiction over Cole." *Id.* at *8.

Like Cole, Bovio severed his contacts with Massachusetts in early 2000 and with the United States in June 2001 – nearly three years before this lawsuit was filed. *See* Bovio Aff. at ¶ 5. Accordingly, LPL cannot rely on Bovio's contacts with the United States from 1991 through 2001 in arguing that this Court has general jurisdiction over Bovio. *See also Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1543-44 (10th Cir. 1996) (no general jurisdiction where defendant previously resided in, owned property in, and traveled to forum).

Nor do Bovio's contacts with the United States at the time this lawsuit was filed establish general jurisdiction. From June 2001 through August 2004, those contacts were limited to occasional communications with the United States, including telephone conversations with personal friends, communications from Italy relating to the California Action, maintaining accounts with Fleet Bank, American Express and Charles Schwab and very few preliminary

12

telephonic and electronic communications with a New Hampshire company on behalf of Bovio's present business, Carena. Bovio Aff. at ¶11. Indeed, Bovio has made only one $7.55 deposit into any of his U.S.–based accounts in more than two years, and he has otherwise utilized each account on less than five occasions during that time period. *Id.* at ¶6.

These contacts have clearly not been "continuous and systematic" with respect to either the Commonwealth of Massachusetts or the United States and, therefore, are insufficient to establish general jurisdiction, regardless of whether Rule 4(k)(2) applies. Indeed, it is well established that the most continuous of those contacts – *i.e.*, Bovio's accounts in the United States – does not constitute sufficient contacts to support exercising general jurisdiction. *See Trierweiler*, 90 F.3d at 1543-44 (noting high threshold for continuous and systematic contacts and concluding that owning a bank account in Colorado, among other contacts, was "highly attenuated" and insufficient for general jurisdiction); *see also Cameco Indus., Inc. v. Mayatrac, S.A.*, 789 F. Supp. 200, 202 (D. Md. 1992) ("Cameco has cited no case in which a defendant has been held subject to in personam jurisdiction in the forum state merely because it maintained a bank account there. That act alone clearly is insufficient to confer 'general jurisdiction'....").

### D.    This Court Does Not Have Specific Jurisdiction Over Bovio

The Federal Circuit has developed a three-prong minimum contacts test for determining whether a district court may exercise specific jurisdiction over a defendant: "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." *3d Systems*, 160 F.3d at 1378 (citing *Burger King*, 471 U.S. at 472, 476-77); *Akro*, 45 F.3d at 1545-46. LPL bears the burden of establishing the first two elements, and Bovio bears the burden of establishing the third element. *Inamed Corp. v. Kuzmak*, 249 F.3d

1356, 1360 (Fed. Cir. 2001). As demonstrated below, LPL cannot meet its burden on either of the first two elements, while Bovio can meet his burden on the third element.

### 1.     Bovio did not "purposefully direct" his activities at United States residents

LPL bears the burden of establishing that Bovio purposefully directed his activities at residents of Massachusetts or the United States. Put another way, the first prong requires that "the defendant's [forum] contacts must represent a purposeful availment of the privilege of conducting activities in the [forum], thereby invoking the benefits and protections of that [forum's] laws and making the defendant's involuntary presence before the state's courts foreseeable." *Daynard*, 290 F.3d at 61 (quoting *Foster-Miller*, 46 F.3d at 144). *See also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 2004 U.S. App. LEXIS 17869, *8-9 (9th Cir. 2004) (quoting *Burger King*, 471 U.S. at 475) ("The first requirement, purposeful availment of the benefits of the forum, 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party' ... A defendant must, by his own actions, create a 'substantial connection' to the forum...."); *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 716 (1st.Cir. 1996) ("Our two focal points are voluntariness and foreseeability.").

Bovio did not purposefully direct his activities at residents of the Commonwealth of Massachusetts or the United States by participating as a fact witness in the California Action – *i.e.*, the conduct underlying LPL's claim. First, the parties in the California Action, including LPL, are not U.S. residents. Thus, LPL cannot identify any U.S. resident at whom Bovio directed his activities. Second, there is no conduct related to LPL's claim that represents Bovio's invocation of the benefits and protections of the laws of the Commonwealth of Massachusetts or the United States. Third, Bovio's communications relating to the California Action are precisely the type of fortuitous and attenuated contacts that do not satisfy due process requirements. Fourth, given that CPT's counsel contacted Bovio, any contacts in the California Action are not voluntary in the sense intended by the purposeful availment prong. *See Phillips Exeter Academy*

*v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 292 (1st Cir. 1999) ("Even if a defendant's contacts with the forum are deemed voluntary, the purposeful availment prong of the jurisdictional test investigates whether the defendant benefited from those contacts in a way that made jurisdiction foreseeable.") Bovio has not benefited from his participation as a witness in the California Action; to the contrary, he has already been deposed for one day in Milan, Italy and has been sued here in the District of Massachusetts. *See* Bovio Aff. at ¶10. Finally, Bovio could not reasonably have foreseen that agreeing to participate as a witness in the California Action and providing testimony therein would subject him to jurisdiction in the United States and potentially disrupt his ability to care properly for his wife.

Simply put, LPL has not alleged and cannot prove Bovio's purposeful availment of Massachusetts or U.S. laws through activities directed at either Massachusetts or U.S. residents. LPL's failure to do so is fatal to any claim of personal jurisdiction.

### 2. LPL's claim does not arise out of or directly relate to Bovio's contacts with the United States

LPL also has not alleged and cannot prove the second prong of the specific jurisdiction analysis – *i.e.*, LPL's claim against Bovio arises out of or directly relates to Bovio's contacts with the Commonwealth of Massachusetts or the United States. *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999). The key inquiry for the analysis under the second prong is whether "the litigation results *from alleged injuries that arise out of or relate to*" the defendant's activities in the forum. *Moldflow*, 296 F. Supp. 2d at 41 (quoting *Burger King*, 471 U.S. at 472-73) (emphasis added); *see HollyAnne*, 199 F.3d at 1308, n.4 ("test is whether the activity in the forum state is a basis for the cause of action"). *See also Gummow*, 2002 U.S. Dist. LEXIS 8271 at *9 (declining specific jurisdiction and holding that second prong was not satisfied where plaintiff's "*injuries did not arise from* [defendant's forum contacts]") (emphasis added). Accordingly, the issue here is whether LPL has alleged and can prove *injuries* that arise out of or relate to Bovio's contacts with the Commonwealth of Massachusetts or the United

15

States. As the Complaint, LPL's Memorandum and Bovio's Affidavit make clear, LPL has not alleged – and cannot prove – such injuries.

LPL's alleged injury in this case arises out of and directly relates to Bovio asserting that he and Frame should have been named as inventors on patents at issue in the California Action and CPT's threatened action against LPL to change the inventors on those patents. *See* Complaint at ¶¶ 12, 14-15; LPL Mem. at 5-7, 8-12. Bovio's assertion, however, was made this year while he was present in Italy, and it was CPT – not Bovio – that submitted his declarations in the California Action. And it was CPT – not Bovio – that threatened to sue LPL. Thus, LPL's alleged injury occurred as a result of Bovio's conduct *in Italy*, not in the United States, and as a result of *CPT's* conduct in the United States. Bovio's conduct in Italy and CPT's conduct, however, are irrelevant for the jurisdictional analysis before this Court. Bovio's conduct in the Commonwealth of Massachusetts or the United States causing injury to LPL is the only relevant conduct, but LPL has not alleged and cannot prove any such conduct.

Bovio suspects that LPL will argue that Bovio's contacts with Massachusetts or the United States *at the time of the invention (i.e., March 1996)* constitute sufficient minimum contacts to support the constitutional exercise of personal jurisdiction. Bovio's contacts at that time are irrelevant to this motion, however, because LPL has not alleged and cannot prove any *injury* arising out of those contacts as required by the United States Supreme Court. *See Burger King*, 471 U.S. at 472-73.

As described above (*see supra* at 7-8), LPL's Complaint and LPL's Memorandum make clear that the acts allegedly causing injury to LPL are (1) Bovio's assertion this year that he and Frame should have been named as inventors on the patents at issue here, and (2) CPT's threatened litigation. LPL has not alleged and cannot prove that any other acts caused it to suffer harm. Specifically, Bovio's contacts at the time of invention clearly did not cause, and are not a basis for, LPL's claim because any alleged injury resulted solely from acts relating to the California Action and, therefore, would have existed regardless of Bovio's conduct at the time of the invention.

16

LPL's failure of proof on the second prong of the specific jurisdiction analysis requires dismissal of its claim.

### 3.    The exercise of personal jurisdiction here is not reasonable and fair

Even assuming LPL could satisfy the first two prongs of the specific personal jurisdiction test – which it cannot – the claim against Bovio should be dismissed because exercising jurisdiction would not be reasonable and fair. In analyzing the reasonableness of exercising personal jurisdiction over a nonresident, district courts should consider five "gestalt" factors: "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies." *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996) (citing *World-Wide Volkswagen*, 444 U.S. 286, 292 (1980); *Champion Exposition Servs., Inc. v. Hi-Tech Elect., LLC*, 273 F. Supp.2d 172, 178 (D. Mass. 2003). Further, the "unique burdens" placed upon a foreign national defending itself locally "should have significant weight" in assessing the reasonableness of a local court's exercise of personal jurisdiction. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114 (1987) ; *see Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993) ("higher jurisdictional barrier" required for aliens).

Each of the gestalt factors weighs in Bovio's favor, and exercise of jurisdiction here therefore would not be reasonable.

- **The Burden on the Defendant:** The burden on Bovio in defending this lawsuit would be extreme. Bovio is a 72 year-old man living in Italy with his 77 year-old wife who is legally disabled due to being partially paralyzed and requires constant care. Bovio has not traveled and left his wife overnight since early 2003. In light of the defendant's age, the health and needs of his wife, his status as a foreign national and his responsibility as Chief Executive Officer for a small business, it

17

would be a substantial hardship for Bovio to defend this lawsuit. Further, this Court should protect Bovio from harassing litigation. *See Champion Exposition*, 273 F. Supp.2d at 179 (citing *Nowak*, 94 F.3d at 718) ("an important purpose of [the first] gestalt factor ... is the need to protect remote defendants from harassing litigation"). As described in detail in the Frame Memorandum, LPL's claims against Frame and Bovio before this Court are strategic attempts to intimidate Bovio and Frame and to avoid litigating these inventorship issues before Judge Marshall in the California Action where they have been pending for two years. *See* Frame Mem. at 18-20. The first gestalt factor clearly weighs in favor of dismissal.

- **The Interests of the Forum State:** Because the inventorship issues underlying LPL's claim are already pending in the Central District of California (*see* Frame Mem. at 16-20), neither Massachusetts nor the United States has any interest in this particular litigation. In addition, the plaintiff in this case – LPL – is not a Massachusetts or United States resident. Thus, neither forum has an interest in protecting LPL, which already filed a lawsuit in California on the same patents at issue here.

- **The Plaintiff's Interest in Obtaining Relief:** For the same reasons the second gestalt factor supports dismissal, this third gestalt factor does so as well. LPL is not a Massachusetts or United States company. More importantly, however, LPL has the ability to get the same relief in a more convenient and efficient manner in the California Action. *See* Frame Mem. at 16-20.

- **The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies:** As described in the Frame Memorandum, there is no

18

case or controversy between LPL and the defendants in this case. Frame Mem. at 11-16. Nonetheless, the most efficient resolution of the inventorship issue would occur if this case is dismissed and the issue continued to be litigated in California. The court there has already had the issue of the inventorship of these patents before it for two years. *See* Frame Mem. at 16-18.

- **The Interest of the States in Furthering Their Social Policies:** The United States and the Commonwealth of Massachusetts do not have any social policies implicated by this dispute between a Korean company and an Italian citizen. If any social policy applies here, it is a policy that foreign companies should not be permitted to use the American courts to intimidate foreign nationals who have agreed to participate as witnesses in ongoing litigation in federal district court. *See* Frame Mem. at 18-20.

The unreasonable nature of exercising personal jurisdiction here is demonstrated by comparing the facts here with those of other cases where the Federal Circuit has declined to exercise specific personal jurisdiction under the third prong. For example, in *Silent Drive*, 326 F.3d at 1202, the court concluded that sending letters threatening infringement litigation is not sufficient to confer personal jurisdiction under the third prong: "[E]ven though the letters are 'purposefully directed' at the forum and the declaratory judgment action 'arises out of' the letters, letters threatening suit for patent infringement sent to the alleged infringer by themselves 'do not suffice to create personal jurisdiction' because to exercise jurisdiction in such a situation would not 'comport with fair play and substantial justice.'" *Id.* (quoting *Red Wing*, 148 F.3d at 1359-60). For the reasons described above, the exercise of personal jurisdiction here would be far more unreasonable than in *Silent Drive*.

Thus, the third prong of the specific jurisdiction analysis provides an independent ground for dismissing this case for lack of personal jurisdiction.[4]

## IV.    CONCLUSION

For the foregoing reasons, Bovio respectfully requests that this Court dismiss LPL's claim for lack of personal jurisdiction.

The Defendant, MICHELE B. BOVIO
By His Attorneys

Andria Coletta (BBO No. 636930)
TAYLOR DUANE BARTON & GILMAN, LLP
160 Federal Street
Boston, Mass. 02110
(617) 654-8200

Of Counsel:
Teresa M. Corbin
Glenn W. Rhodes
Christopher A. Mathews
Brian S. Kim
Michael L. Resch
HOWREY SIMON ARNOLD & WHITE, LLP
550 South Hope Street, Suite 1100
Los Angeles, CA  90071
Telephone:  (213) 892-1800
Fax:  (213) 892-2300

## CERTIFICATE OF SERVICE

I, Andria Coletta, attorney for defendant, Michele B. Bovio, hereby certify that on August 30, 2004, I mailed a copy of the following FRCP 12(b)(2) Motion of Defendant Michele B. Bovio To Dismiss For Lack of Personal Jurisdiction by regular mail, postage prepaid, to Andrew M. Higgins, Casner & Edwards, LLP, 303 Congress St., Boston, MA 02210 and Anthony C. Roth, Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Ave., N.W., Washington, D.C. 20004.

Andria Coletta (BBO No. 636930)

---

[4]    Bovio anticipates LPL will seek to take jurisdictional discovery in response to this motion. Granting such a request would further LPL's goal of intimidating and harassing Bovio to discourage him from participating further in the California Action. LPL has already deposed Bovio once in Italy as part of the California Action, and during that deposition, LPL questioned Bovio about his United States contacts and contacts with CPT's counsel. CPT has committed that Bovio will sit for another day of deposition in Italy as part of the California Action, and a third day of deposition in connection with this motion – *i.e.*, another full day away from his wife and his company – would in itself be a hardship. More importantly, there is no need for discovery. LPL – try as it may – will not be able to contradict the facts in Bovio's Affidavit, and this motion can be and should be decided on the record before the Court.

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................... 5

    A.    As An Italian Citizen With Permanent Residence In Switzerland, Bovio Worked In The United States As A Nonresident Alien From 1991 – 2001 .......................... 5

    B.    Bovio's Contacts With The United States From June 2001 To The Present ......... 6

    C.    LPL's Claim Against Bovio Relates To His Participation From Italy As A Fact Witness In The California Action .......................................................................... 7

III.  ARGUMENT .......................................................................................................... 8

    A.    Legal Standards Governing This Motion .............................................................. 8

    B.    Due Process Requirements For The Exercise Of Personal Jurisdiction ............... 10

    C.    This Court Does Not Have General Jurisdiction Over Bovio .............................. 11

    D.    This Court Does Not Have Specific Jurisdiction Over Bovio .............................. 13

        1.    Bovio did not "purposefully direct" his activities at United States residents .................................................................................................... 14

        2.    LPL's claim does not arise out of or directly relate to Bovio's contacts with the United States .............................................................. 15

        3.    The exercise of personal jurisdiction here is not reasonable and fair ........ 17

IV.   CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*3D Systems, Inc. v. Aarotech Laboratories, Inc.,*
    160 F.3d 1373 (Fed. Cir. 1998) ............................................................................3

*Akro Corp. v. Luker,*
    45 F.3d 1541 (Fed. Cir. 1995) .........................................................................8, 13

*Asahi Metal Indus. Co. v. Superior Court,*
    480 U.S. 102 (1987)........................................................................................11, 17

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
    21 F.3d 1558 (Fed. Cir. 1994) ............................................................................10

*Boit v. Gar-Tec,*
    967 F.2d 671 (1st Cir. 1992)..................................................................................9

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985).............................................................................................10

*Cameco Indus., Inc. v. Mayatrac, S.A.,*
    789 F. Supp. 2d 200 (D. Md. 1992).....................................................................13

*Champion Exposition Services, Inc. v. Hi-Tech Electric, LLC,*
    273 F. Supp.2d 172 (D. Mass. 2003) ..............................................................17, 18

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,*
    290 F.3d 42 (1st Cir. 2002)...............................................................................9, 14

*Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation,*
    297 F.3d 1343 (Fed. Cir. 2002) ........................................................................8, 11

*Foster-Miller, Inc. v. Babcock & Wilcox Canada,*
    46 F.3d 138 (1st Cir. 1995)...............................................................................9, 14

*Gummow v. Cole,*
    2002 U.S. Dist. LEXIS 8271, *8 (N.D. Ill. 2002) .........................................3, 11, 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984)...........................................................................................2, 11

*HollyAnne Corp. v. TFT, Inc.,*
    199 F.3d 1304 (Fed. Cir. 1999) ...........................................................................15

*Inamed Development Co. v. Kuzmak,*
    249 F.3d 1356 (Fed. Cir. 2001) ...........................................................................14

*International Shoe Co. v. Washington,*
   326 U.S. 310 (1945)................................................................................1, 10, 11

*Mass. School of Law at Andover, Inc. v. American Bar Ass'n,*
   142 F.3d 26 (1st Cir. 1998)..................................................................................11

*Moldflow Corp. v. Simcon, Inc.,*
   296 F. Supp.2d 34 (D. Mass. 2003).................................................................9, 15

*Noonan v. Winston Co.,*
   135 F.3d 85, (1st Cir. 1998).................................................................................11

*Nowak v. Tak How Investments, Ltd.,*
   94 F.3d 708 (1st.Cir. 1996)............................................................................14, 18

*Phillips Exeter Academy v. Howard Phillips Fund, Inc.,*
   196 F.3d 284 (1st Cir. 1999).................................................................................15

*Rano v. Sipa Press, Inc.,*
   987 F.2d 580 (9th Cir. 1993) ...............................................................................17

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,*
   148 F.3d 1355 (Fed. Cir. 1998) ........................................................................9, 19

*Silent Drive, Inc. v. Strong Industries, Inc.,*
   326 F.3d 1194 (Fed. Cir. 2003) ........................................................................9, 19

*Trierweiler v. Croxton and Trench Holding Corp.,*
   90 F.3d 1523 (10th Cir. 1996) ........................................................................12, 13

*United States v. Swiss American Bank, Ltd.,*
   191 F.3d 30 (1st Cir. 1999)..................................................................................10

*Viam Corp. v. Iowa Export-Import Trading Co.,*
   84 F.3d 424 (Fed. Cir. 1996) ...............................................................................17

*World-Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286 (1980).......................................................................................11, 17

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
   2004 DJDAR 10498 (9th Cir. August 23, 2004) .................................................14

## STATUTES

28 U.S.C. § 1404(a).........................................................................................................5

35 U.S.C. § 256 .........................................................................................................8, 11

**RULES**

Federal Rules of Civil Procedure,
  Rule 12(b)(2)..................................................................................................................1

Federal Rules of Civil Procedure,
  Rule 4(k)(1)(A)..............................................................................................................9

Federal Rules of Civil Procedure,
  Rule 4(k)(2)........................................................................................................9, 10, 13