IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LG. PHILIPS LCD., CO. LTD,          )
      Plaintiff,               )
                        )
      v.                          )          Civil Action No. 04-11076 (RCL)
                        )
MICHELE B. BOVIO &                   )
ROBERT C. FRAME,                     )
      Defendants.               )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF
LPL'S OPPOSITION TO DEFENDANT BOVIO'S FRCP 12(b)(2)
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Pursuant to Local Rule 7.1, Plaintiff LG. Philips LCD Co., Ltd. ("LPL") hereby submits

its memorandum of law in opposition to the motion to dismiss for lack of personal jurisdiction

filed by defendant Michele B. Bovio ("Bovio").

## I.    <u>INTRODUCTION</u>

Bovio's motion to dismiss for lack of personal jurisdiction requires the Court to consider

whether LPL's claim (namely, that Mr. Bovio did not in 1996 invent the subject matter of the

four so-called Side-Mount Patents that LPL now owns, *i.e.*, United States Patent Nos. 6,373,537;

6,020,942; and 6,002,457, and 5,926,237) arises out of Bovio's contacts with Massachusetts or

the United States. Yet, Bovio's motion discusses only his participation in the patent

infringement case that is pending in the Central District of California, which are facts that

establish subject matter jurisdiction (*i.e.*, that a case or controversy exists between Bovio and

LPL). The personal jurisdiction inquiry is not so narrowly circumscribed. Rather, it requires a

broader examination of what contacts Bovio had with Massachusetts and/or the United States

when he engaged in the conduct on which he now relies to argue that he is the inventor of the

subject matter of the Side-Mount Patents.

When a proper analysis is made and the full scope of relevant facts is considered, it is clear that Bovio has had significant contacts with Massachusetts relating to his alleged invention of the subject matter of the Side-Mount Patents. Specifically, Bovio lived and worked in Massachusetts at the time that he claims to have developed the invention in the Side-Mount Patents. Using Massachusetts counsel, Bovio prepared and filed a patent application allegedly related to the Side-Mount Patents, an application that he signed in Massachusetts. In addition, Bovio assigned that alleged invention to Digital Equipment Corporation ("DEC"), a then-Massachusetts company, and did so while he was still living in Massachusetts. In his assignment, Bovio agreed to support DEC's efforts to obtain a United States patent for his alleged invention. Thus, under the Massachusetts long arm statute, this Court has personal jurisdiction over Bovio. Well-established case law shows that this is true regardless of the fact that Bovio no longer resides in Massachusetts. Bovio's repeated references to the fact that he currently lives abroad are therefore irrelevant.

In addition, Bovio has had continuous and systematic contacts with the United States as a whole, thereby satisfying the Federal long-arm statute, Federal Rule of Civil Procedure 4(k)(2). For thirty years, Bovio has sought and obtained no less than thirty-seven U.S. patents. In doing so, he agreed a number of times to provide ongoing support to the assignees of those patents. He therefore has been contractually bound to assist in the prosecution of numerous United States patents. Thus, even if the Court were to find that Bovio was not subject to personal jurisdiction in Massachusetts under the state long arm statute, the Federal long arm statute would nonetheless support this Court's personal jurisdiction over Bovio.

In his motion, Bovio did not disclose many of the facts that LPL discovered about his contacts with the United States and Massachusetts. LPL should be permitted to develop those

2

and other facts through discovery and a deposition of Bovio before the Court relies on Bovio's motion, if the Court were inclined to grant the motion. Only then will the Court have a complete picture of Bovio's contacts with this jurisdiction and the United States rather than just the few facts that Bovio chose to highlight in his motion.

## II.    FACTUAL BACKGROUND

In 2002, LPL filed an action for patent infringement in the United States District Court for the Central District of California against Chunghwa Picture Tubes. Ltd. ("CPT") and other defendants (the "California Action"). Four of the six patents asserted in the California Action were the Side-Mount Patents, which relate to technology used to mount liquid crystal displays. *See* Declaration of Anthony C. Roth ("Roth Decl.") Exs. 1-4. The named inventors subsequently assigned their rights in these patents as well as related patents to LG Electronics Inc. ("LGE"), LG LCD Inc., or LPL. *See* First Amended Compl. ¶¶ 8-11. LG Electronics and LG LCD Inc. then assigned their rights in these and related patents to LPL. *Id.* ¶¶ 8-10. LPL thus owns the Side-Mount Patents.

On February 28, 2004, Bovio executed a declaration claiming that he and Robert C. Frame should have been named as inventors on the Side-Mount Patents, and that he had assigned to DEC his rights in the inventions claimed in these patents. *See* Roth Decl. Ex. 6. Bovio executed another declaration on June 17, 2004, providing supplemental information about his claim that he and Frame should have been named as inventors on the Side-Mount Patents. Roth Decl. Ex. 11. Between Bovio's two declarations, LPL filed this action to resolve Bovio and Frame's inventorship claims.

As Bovio admits, the factual backdrop of the inventorship dispute addressed in this case is a 1995-1997 project between DEC and LGE called "Project-X". Roth Decl. Ex. 6 ¶ 2. Before, during, and after Project-X (*i.e.*, 1993-2000), Bovio lived and worked in Massachusetts as a

3

consultant to DEC. *See* Affidavit of Michele B. Bovio in Support of FRCP 12(b)(2) Motion to Dismiss For Lack Of Personal Jurisdiction ("Bovio Aff.") ¶ 3.[1] Thus, much of Bovio's work related to Project-X and to the disputed invention occurred in Massachusetts.

For thirty years, Bovio also has sought to obtain patents in the United States. *See* Roth Decl. ¶ 14 & Ex. 13. He has obtained thirty-seven United States patents. *Id.* He also has at least two pending United States patent applications. *See* Roth Decl. Exs. 14, 15. In 1997, Bovio submitted an application while living in Massachusetts that involves the technology that he claims is the subject of the Side-Mount Patents. *See* Roth Decl. Ex. 7. Bovio's assignment of that 1997 application to DEC states that he agrees "to do . . . all acts reasonable serving to assure that said inventions and discoveries, said patent applications and said Letters Patent shall be held and enjoyed by Assignee as fully and entirely as the same could have been held and enjoyed by [me] . . . ." Roth Decl. Ex. 8. at 2. Bovio also assigned at least three other patents to DEC, each time committing to provide the same or similar support to DEC's patent prosecution and enforcement activities. Roth Decl. Exs 32, 33, 34.

While Bovio was living and working in Massachusetts and Texas, some of his pending patent applications were being prosecuted by the law firms Hamilton Brook Smith & Reynolds ("Hamilton") and Conley, Rose & Tayon, PC ("Conley Rose").[2] As explained in literature published by Hamilton and by Conley Rose on their respective websites, inventors must work closely with the patent prosecution attorneys to obtain a patent. *See* Roth Decl. Exs. 29, 38.

---

[1]    Bovio first came to live in the United States in 1992, when he began working for Zenith in Chicago, Illinois. Bovio Aff. ¶ 3. In 2000, he moved to Houston, Texas. *Id.*

[2]    Roth Decl., Ex. 13 (U.S. Patent Nos. 5918957, 6046571, 6224996, 6125034). At least six patent applications were filed naming Bovio as an inventor after June 2001, when Bovio says he stopped residing in the United States. *See* Roth Decl., Ex. 13 (United States Patent Nos. 6,788,529, 6,778,385, 6,771,492, 6,724,623, 6,456,488, 6,426,871). Two of these were also prosecuted by Conley Rose. *Id.* (U.S. Patent Nos. 6456488, 6426871).

Consequently, given that Bovio has had patent applications pending since he left the United States until today, *see* Roth Decl. Exs. 14-15, he likely is having continuing contact with the attorneys prosecuting those patent applications, despite his physical absence from the United States.

Bovio also was the named inventor on patents that, when issued, had claims that differed from those asserted in the patent applications. *See* Roth Decl. Exs. 17-27. In such a situation, the attorney prosecuting the patent must undertake an inquiry to ensure that the inventor of the claims asserted in the application is also the inventor of the claims as read in the issued patent. *Id.* Ex. 27 §1.48(b). This undoubtedly requires additional contact between the prosecuting attorney and the inventor.

## III.     THIS COURT HAS PERSONAL JURISDICTION OVER BOVIO FOR THE DECLARATORY JUDGMENT ACTION

### A.     The Relevant Standards For Personal Jurisdiction Over Bovio

The most conventional method for determining personal jurisdiction is the prima facie method in which the court accepts the plaintiff's properly supported evidentiary proffers as true, construes them in the light most favorable to plaintiff, and then considers the defendants' proffers to the extent they are undisputed; no evidentiary hearing is held. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002). Two different statutes give rise to the personal jurisdiction inquiry: (1) the Massachusetts long arm statute, Mass. Gen. Laws ch. 223A §3(a), and (2) the Federal long arm statute, Fed. R. Civ. P. 4(k)(2).

In order for there to be personal jurisdiction over a non-resident defendant pursuant to a state long arm statute, due process requires that the defendant must have purposeful, minimum contacts with the forum state such that the defendant can reasonably anticipate that his contacts

with the forum may subject him to litigation there.[3] *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994); *Akro Corp. v. Luker,* 45 F.3d 1541, 1545 (Fed. Cir. 1995) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985)). To establish specific personal jurisdiction, the Court considers three factors: (1) whether the defendant purposely directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether the assertion of personal jurisdiction is reasonable and fair. *Akro Corp.*, 45 F.3d at 1545-46.[4]

If a Court determines that no specific jurisdiction exists over a defendant under a state long arm statute, then the federal long arm statute, Fed. R. Civ. P. 4(k)(2),[5] may provide personal jurisdiction.[6] "In evaluating whether the exercise of personal jurisdiction is warranted [under

---

[3]    The applicable long arm rule in this case is Mass. Gen. Laws ch. 223A §3(a): "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a ) transacting any business in this commonwealth." It is well established that the scope of personal jurisdiction permitted under Massachusetts' long-arm rule is equal to the limits of due process under the United States Constitution. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 52 (1st Cir. 2002). For jurisdictions in which the applicable long arm statute extends to the fullest reach permitted by the due process clause of the United States Constitution, the District Court's sole inquiry becomes whether the Court's exercise of personal jurisdiction over the defendant is consistent with the requirements of due process. *Akro Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed. Cir. 1995). Therefore, the issue for the Court in this case is whether the exercise of personal jurisdiction over LPL satisfies the requirements of due process, as described above; if so, then the exercise of personal jurisdiction is also consistent with Massachusetts state law.

[4]    The burden is on plaintiff to establish the first two prongs of the minimum contacts test. *Akro Corp.*, 45 F.3d at 1545-46. The defendant has the burden to prove the third prong, that jurisdiction would be constitutionally unreasonable. *Id.*

[5]    Rule 4(k)(2) recites:

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

[6]    This Rule functions to close "'[the] loophole' that existed when foreign defendants 'lacked single-state contacts sufficient to bring them within the reach of a given state's long-arm statute,' but 'had enough contacts with the United States as a whole to make personal jurisdiction over

Rule 4(k)(2)], courts concentrate on the quality and quantity of contacts between the potential

defendant and the forum." *U.S. v. Swiss American Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001)

(citations and internal quotation omitted).

As Bovio admits (*see* Bovio Mem. at 10), the inquiry under Fed. R. Civ. P. 4(k)(2) in this

case is similar to the inquiry under the Massachusetts long arm statute. *Swiss American Bank,*

274 F.3d at 617.[2]   Accordingly, the Court must examine the contacts between Bovio and

Massachusetts, and then compare them to the claims asserted in this case to determine if specific

jurisdiction exists under the Massachusetts long arm statute.  If necessary, the Court also may

examine the contacts between Bovio and the United States to determine if personal jurisdiction

exists under the Federal long arm statute in light of the claims asserted in this case.  Finally, the

Court may consider whether it is fair to exercise personal jurisdiction over Bovio under either

long arm statute.  LPL's argument below follows this same analysis.

---

them in a United States court constitutional.' Whereas state long-arm statutes require a showing
that the parties have sufficient contacts with the forum state, Rule 4(k)(2) requires a showing that
the parties have sufficient contacts with the United States as a whole." *U.S. v. Swiss American
Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (quoting *U.S. v. Swiss American Bank, Ltd,* 191
F.3d 30, 40 (1st Cir. 1999) ("Swiss II")). Two elements are examined to ensure that the assertion
of general jurisdiction comports with due process. "First, there must be 'continuous and
systematic general business contacts' between the foreign defendant and the forum." *Id.* at 219
(quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984)). "Second, the
plaintiff must show that the exercise of jurisdiction would be reasonable." *Id.* Alternatively,
Rule 4(k)(2) personal jurisdiction may be supported by contacts establishing "specific
jurisdiction". *See Swiss II*, 191 F.3d at 36-37.

[2]   However, to exercise personal jurisdiction under Fed. R. Civ. P. 4(k)(2), there are two other
requirements: (1) the plaintiff's claim must arise under federal law; and (2) the defendant must
be beyond the jurisdictional reach of any state court of general jurisdiction (the "negation
requirement"). LPL has satisfied both of these additional requirements. First, LPL's claims arise
under the Patent Laws of the United States, 35 U.S.C. §§1 and 256. Second, in accordance with
*Swiss II*, 91 F.3d at 41-42, LPL has certified that based on the information that is readily
available to it and counsel, unless defendant is subject to person jurisdiction in Massachusetts or
California as outlined below, the defendant is not subject to suit in the courts of general
jurisdiction of any state. Roth Decl. ¶ 41.

**B.**     **Bovio's Consulting Activities For DEC Were "Purposefully Directed" At Residents Of The Commonwealth Of Massachusetts and LPL's Claims Arise Out Of Or Relate To These Activities**

     **1.**     **"Purposefully Directed Activities"**

The first prong of the minimum contacts test for specific personal jurisdiction under the Massachusetts long arm statute is whether Bovio purposefully directed his activities at residents of Massachusetts. *Akro Corp.*, 45 F.3d at 1545-46. It is well established that a defendant has purposefully directed his activities at residents of a state where he "deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum." *Id.* (quoting *Burger King Corp.*, 471 at 475-76). Under these circumstances, the defendant "manifestly has availed himself of the privileges of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* Contrary to Bovio's claim, it is irrelevant that LPL is not a United States resident because it is well established that "plaintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant activities were purposefully directed." *Akro Corp.*, 45 F.3d at 1547.

First, Bovio resided and performed design consulting work for DEC in Massachusetts from the summer of 1993 to early 2000. Bovio Aff. ¶ 3. His duties at DEC involved the design, development, patenting (and associated enforcement) of computer systems. Roth Decl. Ex. 6 ¶¶ 4, 27. Bovio's employment by DEC in Massachusetts for at least seven years clearly constitutes "significant activities" within Massachusetts. Second, Bovio was in Massachusetts when he prepared the patent application, working with a Massachusetts attorney, for the alleged invention that is the subject of this litigation. Roth Decl. Exs. 7, 8. Third, Bovio executed the assignment of his alleged rights to that invention in Massachusetts. *Id.* Fourth, he assigned those rights to a

Massachusetts company. *Id.* Fifth, under the assignment of that invention, he has an ongoing

obligation to assist in the prosecution of the application and protection of the assignees rights to

that invention. *Id.*

Bovio's participation in the California action is evidence of the "continuing obligations"

created by his assignment to DEC of his purported patent rights to the invention at issue in this

case, which evolved from his consulting work in Massachusetts. During the time of his

employment with DEC, Bovio assigned numerous other patent rights to DEC. The assignment

agreements explicitly stated or contained language equivalent to the following:

> And *we do further covenant and agree* that we will, *at any time upon request*, communicate
> to DIGITAL EQUIPMENT CORPORATION, its successors, assigns or other legal
> representatives, such facts relating to said invention and Letters Patent or the file history
> thereof as may be know to us, and *testify as to the same in any interference or other
> litigation when requested to do so,* without further compensation but at the expense of said
> assignee, its successors, or other legal representatives.

Roth Decl. Ex. 31 (emphasis added); *see also* Roth Decl. Exs. 32-34. By signing these

agreements, Bovio expressly created "continuing obligations" with DEC, a Massachusetts

corporation resident in Massachusetts.

Only by ignoring all of these contacts with Massachusetts and limiting the discussion of

his activities to the last sixth months can Bovio argue that he has not "purposefully directed" his

activities to Massachusetts residents. Bovio Mem. at 14. The question, however, is not what

Bovio has done in the past six months, but what contacts he had with Massachusetts during the

period when he allegedly created the side-mount technology that gives rise to this case. *Eli Lilly*

*& Co. v. Crabtree*, 2004 WL 828247 (S.D. Ind. March 19, 2004), demonstrates this point. In *Eli*

*Lilly*, as here, a patent owner filed a declaratory action after non-resident defendants threatened

him with a lawsuit for co-inventorship. *Eli Lilly*, 2004 WL 828247 at *3. The patent owner

sought a judgment that the named inventors on the patents were the true inventors and that

9

defendants should not be named as inventors. *Id.* In finding personal jurisdiction over the defendants, the court examined the defendants' activities around the time of the invention and found personal jurisdiction. *Id.* * 6-8. Just as in *Eli Lilly*, Bovio's contacts with Massachusetts are relevant and support the Court's jurisdiction over him.

## 2.    LPL's Claims "Arise Out Of Or Relate To" Bovio's Activities

The second prong of the minimum contacts test for specific personal jurisdiction under the Massachusetts long arm statute is whether LPL's cause of action "arises out of or relates to" Bovio's consulting work for DEC. *Akro* Corp., 45 F.3d at 1545-46. This phrase "is intended to be more flexible than a simple 'arises out of' standard." *Travel Tags, Inc. v. Digital Replay, Inc.*, 2003 WL 22145272 *6 (D. Minn. Sept. 15, 2003) (quoting *Akro Corp,* 45 F.3d at 1545)).

In a declaratory judgment action like this one, the inquiry involves a comparison not just of the facts that give rise to the Article III case or controversy between the parties, but of the merits facts as well. *See, e.g., Viam Corp. v. Iowa Export-Import Trading Co.*, 83 F.3d 424, 427 (Fed. Cir. 1996) (explaining that in declaratory action challenging the enforceability of a patent that "[t]he issues on the merits are essentially the same [as in the infringement suit]; the test for personal jurisdiction, for the forum's power to hear the issues, should be the same"). Thus, Bovio miscasts LPL's cause of action as relating to, and LPL's injury as arising merely from, "his participation from Italy as a fact witness in the California Action" and incorrectly argues that his contacts "with Massachusetts or the United States *at the time of the invention*" are irrelevant. Bovio Mem. at 7, 16.

In this case, the issue is one of inventorship, which presents "the critical question . . . who conceived . . . the subject matter of the *claims* at issue. To determine whether [a person] made a contribution to the conception of the subject matter of [a claim, the] court must determine what [the person's] contribution was and then whether that contribution's role appears in the *claimed*

invention." *Frank's Casing Crew & Rental Tools, Inc. v. PMR Technologies, Ltd.*, 292 F.3d 1363, 1373 (Fed. Cir. 2002) (citations and internal quotations omitted). Thus, for example, in *Eli Lily*, where as here a declaratory judgment was filed to affirm the proper recordation of inventorship, the court looked at the activities surrounding the inventorship, not at the defendant's threats to disrupt the recorded inventorship. The activities that the court examined included telephone calls to and meetings within the forum, sending and receiving materials to/from the forum, and meetings outside the forum pertaining to the patented subject matter. *Id* at *6-8. With respect to one defendant, the court stated, "by nature of his agreement to collaborate with [plaintiff] on the very project that became the subject matter of the patents at issue in this case, [defendant] . . . established the minimal contacts with [the forum] for this Court to have jurisdiction over him." *Id.* at *7.

Looking at Bovio's contacts with Massachusetts, *see supra* Section III B(1), at the time he allegedly invented the side-mount technology and comparing them with the proper characterization of the claims here, Bovio's connections with Massachusetts are intertwined with his alleged inventorship and patent rights, and thus LPL's claims. LPL's declaratory action seeking determination of the inventorship of these same patents precisely "arises out of or relates to" Bovio's activities in Massachusetts. In fact, Bovio's connections with Massachusetts are more compelling than those identified in *Eli Lily* because Bovio was *residing and working in Massachusetts* on the project he alleges gave rise to the invention. Roth Decl. Ex 6 ¶¶ 1, 4. Clearly, sufficient minimum contacts must exist between Bovio and Massachusetts.

**C.    Bovio Has Had The Continuous And Systematic Contacts With The United States Required By Fed. R. Civ. P. 4(k)(2)**

Bovio also is subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(2). Bovio has had systematic and continuous contacts with several states for thirty years and, moreover, the claims in this case arise from some of these systematic and continuous contacts.

First, the exchanges between Bovio and CPT regarding the preparation and filing of his declaration occurred in California for jurisdictional purposes under Fed. R. Civ. P. 4(k)(2). Attempting to avoid personal jurisdiction under the federal long arm statute, Bovio emphasizes that he is not located in the United States today and uses that fact to argue that his participation in the California Action is not a contact with California. Bovio Mem. at 14-15. This is wrong. Physical presence in a forum is not required for conduct to occur there for purposes of personal jurisdiction analysis. As the Federal Circuit has observed, "[i]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Electronics For Imaging v. Coyle,* 340 F.3d 1344, 1351 (Fed. Cir. 2003) (quoting *Burger King Corp.*, 471 U.S. at 476). Furthermore, Bovio "agreed" to participate in the California action, Bovio Mem. at 4, at CPT's request and years earlier committed himself to do so in assignments with DEC. *See* Roth Decl. Exs. 32-35. Thus, his actions were voluntary. *Burger King Corp.*, 471 U.S. at 480 (quality and nature of relationship stemming from voluntary acceptance of long-term business agreement envisioning continuing contacts can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated'). Moreover, even before initiation of this action, Bovio hired counsel in California to represent him in connection with his claim that he should be named as an inventor in the Side-Mount Patents. *See* Roth Decl. Exs. 9, 10. In addition, aside from his United States patent activity, Bovio as CEO of Carena & Associati

("Carena") most likely communicates with Security Tree, a "direct distributor" in California of Carena's products. Roth Decl. Ex. 37. Thus, Bovio has had significant contacts with California in at least the last six months or longer.

Second, Bovio has had significant and continuous contacts with Massachusetts since 1993, as discussed above in Sections III(B)(1) &(2). Some of those contacts have continued to the present as evidenced by his consulting/patent related activities and his Fleet Bank account. *See* Bovio Aff. ¶ 6. Bovio has other contacts with Massachusetts that can only be revealed through discovery in this case. *See* Roth Decl. ¶ 40.

Third, Bovio's contacts with the United States Patent & Trademark Office reach back thirty years. He has "continuous[ly] and systematic[ly]" sought protection of U.S. patent laws, acquiring 37 patents over a period of almost 30 years. *See* Roth Decl, Ex. 13. Of these 37 patents, 23 are still in effect and Bovio has assigned at least 19 of those to DEC or Compaq. *See* Roth Decl. Ex. 30. The assignments signed by Bovio require him to support the acquisition and enforcement in the United States of the assigned patent rights, creating "continuing obligations" with residents of the United States. Roth Decl., Exs. 32-35. Moreover, since his return to Italy, Bovio would have been heavily involved in the preparation and prosecution of several patent applications because (a) ten of the Bovio's patents issued *after* Bovio returned to Italy, *see* Roth Decl., Ex. 13; and, (b) six patent applications naming Bovio as an inventor were filed *after he returned to Italy*. Roth Decl. Exs. 30, 38 (showing inventor and attorney work closely together).[8]

---

[8]    Aside from substantive prosecution activities, contacts would also have occurred for procedural issues. For example, one of the patent applications (issuing as U.S. Pat. No. 6,771,492) required a new oath. Bovio must have reviewed the patent application prior to signing the oath. Roth Decl. Ex. 13. Further, the claims issuing in the patents for several of these applications were amended, in some cases extensively, after the application was published, suggesting that the attorney prosecuting the patent applications would have contacted Bovio to ensure that Bovio was still an inventor of the issuing claims. Roth Decl. Exs. 17-26. 37 CFR

Moreover, Bovio continues to contract with United States residents as evidenced by the execution of three patent assignments after his return to Italy in June 2001. Roth Decl. Exs. 16, 30 (assignments 17-19). A final telling fact evidencing the "continuous and systematic contacts" Bovio has had with the United States is his own admission as to how well versed he is with United States patent law. Roth Decl. Ex. 6 ¶ 29.

Fourth, he has contacts with Charles Schwab in New York, Bovio Aff. ¶ 6, and Bovio admits to exploring a business prospect in New Hampshire in spring 2003. Bovio also has an account with American Express in the United States. *Id.* ¶ 6.[9]

Not only do these facts show sufficient contacts with United States to establish general jurisdiction over Bovio under Fed. R. Civ. P. 4(k)(2), they also demonstrate that Bovio's United States patent activities have clearly been purposefully directed at the residents of the United States. As noted above, the law does not require a showing that LPL be the resident that is the object of Bovio's contacts. *See infra* at 8. Bovio for decades has been, and still is, acquiring United States patent rights. LPL's declaratory action seeking to confirm the inventorship of its Side-Mount Patents "arises from or relates to" Bovio's United States patent activities, including his recent participation in the California action. Accordingly, sufficient "minimum contacts" exist as well to establish specific jurisdiction over Bovio.

---

1.48 requires that inventorship be corrected if amendment during prosecution caused the inventorship of the issuing claims to change. Roth Decl. Ex. 27.

[9]    Bovio also may have availed himself of the notification service provided by the United States Patent and Trademark Office, which requires consent to be subject to jurisdiction in the United States District Court for the District of Columbia on any issues relating to a registered patent. Roth Decl. Ex. 27.

**D.    It Is Constitutionally Reasonable And Fair For The Court To Exercise Jurisdiction Over Bovio Under Either The State or Federal Statute**

The third prong of the minimum contact test under the Massachusetts long arm statute is whether the assertion of personal jurisdiction is reasonable and fair. Once the plaintiff has shown via the first two prongs that sufficient minimum contacts exist to satisfy due process, the defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Electronics For Imaging, Inc.*, 340 F.3d at 1351-52 (quoting *Burger King Corp.*, 471 U.S. at 477)). The same examination is required under the federal long arm statute. *See supra* note 4.

The reasonableness inquiry considers five "gestalt" factors: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Electronics For Imaging, Inc.*, 340 F.3d at 1352. "Dismissals for lack of personal jurisdiction [are] 'limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'" *Travel Tags, Inc.*, 2003 WL 22145272, *7 (quoting *Beverly Hills Fan Co.*, 21 F.3d at 1568); *Akro Corp.*, 45 F.3d at 1549.

**1.    Bovio's Voluntary Actions And The Foreseeability Of The Subject Litigation Clearly Offset The Alleged Burden Of Defending This Suit In Massachusetts**

The first factor considered in the reasonableness inquiry is the burden of appearance. Bovio argues that it would be a substantial hardship for him to defend this lawsuit given his age, his wife's illness, his foreign national status, and his responsibility as Chief Executive Officer of

a small business. Bovio Mem. at 17-18. Bovio further submits that LPL's complaint in this court is an attempt to "intimidate Bovio." Bovio Mem. at 18.

As to his age, Bovio does not claim any hardship due to frailty and any such claim would be belied by the fact that he is Chief Executive Officer of a company who sat for a deposition just two months ago. With respect to his business obligations, Bovio offers no facts showing a hardship and makes no claim that he "is under [a] greater [] burden than any other non-resident defendant." *Champion Exposition Services, Inc. v. Hi-Tech Electric, LLC*, 273 F.Supp.2d 172, 178 (D.Mass. 2003) (finding jurisdiction and rejecting hardship claim based on the fact that defendant was a "small, new business" with "a small number of employees, all of who [sic] are actively involved in the daily operations of sustaining and building a young business"). As other courts have recognized:

> [I]t is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction. Thus for this particular gestalt factor to have any significance, the defendant must demonstrate that exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.

*Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996) (internal citations and quotations omitted); *see also Champion Exposition Services*, 273 F.Supp.2d at 178.

With respect to Bovio's claimed hardship due to his wife's illness, several facts suggest that any such burden does not deprive the Court of personal jurisdiction over Bovio. For example, Bovio is voluntarily participating in the California Action. His declarations in that case explicitly envision that he will be called to testify in that case and that he will do so. *See* Roth Decl. Exs. 6, 11 ("If called as a witness, I could and would testify competently thereto").

As stated above, for this "gestalt" factor to have any significance, the defendant must demonstrate that "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *Nowak*, 94 F.3d at 718; *Champion*

*Exposition Services, Inc.*, 273 F.Supp.2d at 178.  Bovio has not made the requisite showing and this "gestalt" factor clearly weighs in favor of plaintiff.

Finally, turning to Bovio's claim of harassment, this claim is meritless.  LPL's cause of action merely seeks to resolve the inventorship dispute arising from Bovio's alleged invention during his DEC consulting work, of the subject matter claimed in LPL's patents.  Far from being harassment, LPL's filing of a declaratory action under these circumstances is entirely foreseeable.  First, such an action is especially foreseeable to someone, like Bovio, who is well versed in United States patent law.  Roth Decl. Ex. 6 ¶ 29.  Second, during his employment with DEC, Bovio signed numerous patent assignment agreements containing provisions explicitly stating that he would testify in litigations to enforce the assigned rights.  Third, Bovio knew when he worked for DEC in Massachusetts in the 1990s that LGE had sought and obtained a patent on the invention he now claims.  *See* Roth Decl. Exs. 5, 35 & 36.  Accordingly, any policy to "protect remote defendants from harassing litigation" is irrelevant because LPL is not harassing Bovio.  The real policy question before the Court is whether a foreign national should be permitted to threaten United States patent rights without being required in a court of appropriate jurisdiction to address the very dispute giving rise to those threats.  Similarly, by emphasizing the extent of "his responsibilities as CEO" of Carena, Bovio establishes that he is involved in activities unrelated to the care of his wife.  Though Bovio's commitments to his wife may require accommodations in the discovery process (*e.g.*, his deposition may have to be taken in Italy at his expense), they do not make the Court's exercise of personal jurisdiction over him improper where he is under no obligation to appear personally in this Court.

**2.**     <u>Both Massachusetts And The United States Have Significant Interests In Resolving A United States Patent Dispute Arising From Conduct That Occurred In Massachusetts and LPL Has An Interest In Unitary Proceeding</u>

The second "gestalt" factor considered is the interest of the forum state in adjudicating the dispute and the third gestalt factor involve a related concept—plaintiff's interest in obtaining convenient and effective relief. In addressing these factors, Bovio makes two arguments: (1) the inventorship issues underlying LPL's claims are already pending in the California Action; and (2) LPL is not a Massachusetts or United States resident. Neither point has merit and Bovio is wrong in concluding that neither forum has an interest in protecting LPL and that LPL can get relief in California. Bovio Mem. at 18.

Massachusetts has an interest in conflicts arising from business transactions occurring within the Commonwealth and LPL's declaratory action arises out of Bovio's consulting work for DEC in Massachusetts and Bovio's filing of a patent application from Massachusetts. Under the Federal long arm statute analysis, the United States clearly has an interest in resolving disputes involving *United States* patent rights. The current action is a declaratory action to determine the inventorship of LPL's United States *patents* under federal law. Thus, both Massachusetts and the United States have significant interests in this litigation.

For its part, LPL has a significant interest in resolving this inventorship dispute regarding its United States Side-Mount Patents in a forum having jurisdiction over *both* Bovio and Frame. Massachusetts is such a forum; it is unclear at this time whether California is. Although Bovio repeatedly references the California Action, he has not conceded that he is subject to personal jurisdiction there.[10] None of the underlying 1995-1997 events are known to have occurred in California. Thus, at this time, it is not clear that Bovio's or Frame's contacts with California will

---

[10]    Likewise, Frame has not conceded that the California court has jurisdiction over him.

be sufficient to satisfy due process such that the California court may have personal jurisdiction. Therefore, it is not enough for Bovio to simply state that LPL can get relief in California, especially since the California Court denied CPT's request to add an inventorship claim to the California Action. Thus, the second and third gestalt factors weigh heavily for LPL.

### 3. The Interstate Judicial System's Interest In Obtaining The Most Efficient Resolution Of Controversies Is Served By Litigating LPL's Inventorship Disputes With Bovio And Frame In The Same Forum -- Massachusetts

As to the fourth "gestalt" factor, Bovio relies on the existence of the California Action. While the California Action was filed approximately two years ago in 2002, Bovio and Frame's inventorship claims did not surface until March 2004 and is not a part of the California Action. Nor can Bovio boot strap his motion to dismiss for lack of personal jurisdiction with Frame's pending motion to dismiss for lack of subject matter jurisdiction because, should this Court find that subject matter jurisdiction exists, the Court will have personal jurisdiction over Frame, a Massachusetts resident. Accordingly, the interstate judicial system's interest in obtaining the most efficient resolution of controversies is served by litigating the inventorship disputes of LPL's patents with Bovio and Frame in the same forum and that forum is Massachusetts. This factor also favors the finding of jurisdiction.

### 4. The States' Shared Interest In Furthering Fundamental Substantive Social Policies Is Served By Holding Bovio Accountable In The Forum From Which Bovio's Alleged Rights Arise

The fifth and final "gestalt" factor in the reasonableness inquiry is the shared interest of the several states in furthering fundamental substantive social policies. Bovio again relies on the fact that neither he nor LPL are United States residents. Massachusetts, however, has a policy interest in resolving conflicts arising from business transactions occurring within the Commonwealth and LPL's declaratory action arises out of Bovio's consulting work for DEC in

Massachusetts. The United States has a policy interest in resolving disputes involving *United States* patent rights. As explained above, the current action is a declaratory action to confirm the inventorship of LPL's United States Side-Mount Patents and LPL has a legitimate and foreseeable cause of action arising from Bovio's claimed invention during his work for DEC in Massachusetts in the 1990s. Thus, this final "gestalt" factor also favors plaintiff and the exercise of jurisdiction over Bovio does not offend the traditional notions of fair play and substantial justice guaranteed by due process.

### E.    LPL Should Be Allowed To Conduct Discovery To Explore And Develop Personal Jurisdiction Facts

Bovio failed to identify many of the contacts he has had with the United States—namely, his continuing patent prosecutions and the continuing obligations in his many assignments. In addition, Bovio has other contacts with Massachusetts that cannot be revealed due to confidentiality provisions. *See* Roth Decl. ¶ 40. The First Circuit has held that "[a] timely and properly supported request for jurisdictional discovery deserves solicitous attention." *Swiss Bank II*, 191 F.3d at 45-46. Given the foregoing facts, LPL should be permitted discovery to explore and develop jurisdictional facts regarding Bovio.

### IV.    CONCLUSION

For the foregoing reasons, LPL requests that the Court deny Bovio's motion.

Dated: September 13, 2004

Of Counsel:

Anthony C. Roth
Corinne A. Niosi
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-3000

Plaintiff,
By its attorneys,

Robert A. Murphy (BBO No. 363700)
Andrew M. Higgins (BBO No. 233800)
CASNER & EDWARDS, LLP
303 Congress Street
Boston, MA 02210
(617) 426-4900

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the following counsel of record by first class mail on September 13, 2004:

Edward D. Shoulkin, Esq.
Andria Coletta, Esq.
Taylor Duane Barton & Gilman LLP
160 Federal Street, 5th Floor
Boston, MA 02109

Christopher A. Matthews, Esq.
Michael L. Resch, Esq.
Howrey Simon Arnold & White LLP
550 South Hope Street, Suite 1100
Los Angeles, CA 90071

_____
Andrew M. Higgins

8232.0/331705.1